379 F.2d 298
 67-2 USTC P 9519
 ROYALTON STONE CORPORATION, Frontier Stone Products, Inc.,
Holman O'Connor, Mary W. O'Connor, James M.
Switzer and Dorothea W. Switzer, Petitioners,
v.
COMMISSIONER OR INTERNAL REVENUE, Respondent.
 Nos. 443-449, Dockets 31056-31062.
 United States Court of Appeals Second Circuit.
 Argued May 11, 1967.
Decided June 14, 1967.
 
 Albert R. Mugel, Buffalo, N.Y. (Timothy C. Leixner, Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N.Y., on the brief), for petitioners.
 Jonathan S. Cohen, Washington, D.C. (Mitchell Rogovin, Asst. Atty. Gen., lee A. Jackson and Grant W. Wiprud, Attys., Dept. of Justice, Washington, D.C., on the brief), for respondent.
 Before SMITH, KAUFAMAN and HAYS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 These are petitions for review of decisions of the Tax Court holding that certain payments received by the taxpayers[1] were ordinary income, to wit, royalty payments on minerals extracted from taxpayers' proparty, and not payments of the purchase price for the sale of the property. We affirm the decisions of the Tax Court.
 
 
 2
 Royalton Stone Corporation and Frontier Stone Products, Inc. are engaged principally in the business of quarrying stone for road building. The stock of the two corporations is owned fifty percent each by the taxpayers Switzer and O'Connor.
 
 
 3
 Switzer and O'Connor each owned a hald interest in three parcels of real property. During the years 1957 to 1959 Switzer and O'Connor executed agreements with Royalton and Frontier under which the corporations were to quarry the deposits of stone and other materials on the real property.
 
 
 4
 Since the agreements were substantially identical, it is sufficient to set forth as an example the relevant parts of the agreement executed by Switzer and O'Connor with Frontier in respect to one of the parcels of real property:
 
 
 5
 1. The parties of the first part (O'Connor and Switzer) agree to sell, and the party of the second part (Frontier) agrees to purchase the premises situate in the City of Lockport, in the County of Niagara and State of New York, particularly described in a certain deed dated the 1st day of October, 1956, duly recorded in the Office of the Clerk of the County of Niagara, as follows:
 
 
 6
 (Land Description)
 
 
 7
 2. Said premises are to (be) conveyed by the parties of the first part by Covenant against Grantor Deed conveying good and marketable title to the premises, free from all encumbrances upon payment of the purchase price to be fixed and paid in the following manner, to-wit: The party of the second part shall enter into immediate possession of the premises hereinabove described for the purpose of quarrying and removing therefrom sand, gravel, stone and other materials useable in its business and shall pay to the parties of the first part, on or before the 31st day of December of each year after date, the sum of twenty cents (20cents) per ton of materials so quarried and removed during the preceding period.
 
 
 8
 3. When the party of the second part has completed its quarrying operations on said property and paid on account of the purchase price of the premises, the full sum of twenty cents (20cents) per ton for materials quarried and removed as hereinabove set forth, the parties of the first part shall thereupon execute and deliver title to the premises in the manner hereinbefore described.
 
 
 9
 4. The parties of the first part shall pay all taxes and assessments levied against said premises prior to the delivery of the deed and the party of the second part shall indemnify and harmless save the parties of the first part of and from any and all liability, in law and in equity, for loss or damage to any person or property arising out of its operations on the described premises from and after the date hereof.
 
 
 10
 It is the contention of the Commissioner that the amounts paid by the corporations to the taxpayers at the rate of 20 cents per ton for the minerals removed represented royalty payments and therefore ordinary income. The taxpayers urge that the payments were the purchase price for the sale of the land and should receive capital gains treatment.
 
 
 11
 The provisions of the agreements designating the transactions as 'purchases' and 'sales' are, of course, not conclusive. In order to determine the tax consequence of the transactions, we must look to their essential character rather than their form. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); Anderson v. Helvering, 310 U.S. 404, 411, 60 S.Ct. 952, 84 L.Ed. 1277 (1940).
 
 
 12
 Upon close examination the incidents of the transactions into which the parties entered prove to be a licensing arrangement with provisions for royalty payments rather than a sale of the minerals. The taxpayers merely licensed the corporations to remove the minerals in return for a share of the proceeds of their sale. The only property transferred to the corporations by the agreements was the right to quarry to minerals. There was no present conveyance of anything else.
 
 
 13
 The taxpayers expressly reserved legal title until some indefinite future time and, as an appropriate incident of ownership, were obliged to pay taxes and assessments on the property. It is clear that they continued to own the minerals until they were removed truckload by truckload.
 
 
 14
 The land itself was acquired by the taxpayers for the sole purpose of having the corporations quarry the minerals. The exploitation of the minerals was the primary objective of the entire series of transactions.
 
 
 15
 The taxpayers were, of course, dealing with themselves and thus could have the corporations quarry whatever amount they wanted to have quarried. Nothing in the agreements indicates an intent to buy and sell any given amount of minerals. There was no obligation to pay for anything except the amount which was quarried.
 
 
 16
 There was no requirement that all the minerals be extracted and the agreements fixed no maximum or minimum amount which the corporations were to quarry. In fact the corporations had no affirmative duty to mine at all. They could terminate the quarrying at any time without any liability except to pay 20 cents a ton for the minerals already quarried. If the corporations failed or refused to quarry, the agreements provide for no obligation to pay any amount whatever.
 
 
 17
 The corporations were not required to make any initial payment.
 
 
 18
 'We have said that the instrument should be construed as a sale when a large cash payment was made with a reserved payment that could be satisfied by future sales of the transferred property without extraction of the oil. * * * On the other hand, we have construed an assignment of oil leases for cash and a deferred payment, 'payable out of oil only, if, as and when produced,' as the reservation of an economic interest in the oil-- not a sale. Thomas v. Perkins, 301 U.S. 655 (57 S.Ct. 911, 81 L.Ed. 1324).' Burton-Sutton Oil Co. v. Commissioner, 328 U.S. 25, 35-36, 66 S.Ct. 861, 867, 90 L.Ed. 1062, 162 A.L.R. 827 (1946).
 
 
 19
 No fixed purchase price was paid or payable at any time. If there was no quarrying the taxpayers would receive nothing. The only obligation of the corporations was to pay 20 cents a ton for whatever amount they removed. The agreements provided for no additional consideration for the conveyance of the land.
 
 
 20
 The arrangement into which the taxpayers entered differs in dispositive respects from the arrangement in Crowell Land & Mineral Corporation v. Commissioner, 242 F.2d 864 (5th Cir. 1957) on which taxpayers seek to rely. In Crowell the transferee of the alnd was given five years in which to extract the minerals and was required to make a down payment and to pay a fixed minimum over a period of time, regardless of the amount extracted. Unlike the present case there was thus provision for a fixed amount over a fixed period of time. The result in Crowell is consonant with the decisions in Barker v. Commissioner, 250 F.2d 195 (2d Cir. 1957), where there was an obligation to pay no matter what the extend of the minerals extracted, and in Gowans v. Commissioner, 246 F.2d 448 (9th Cir. 1957), where the purchaser was required to quarry a fixed amount. The present case is consistent with the recent decision of the Fifth Circuit in Wood v. United States, 377 F.2d 300 (May 11, 1967).
 
 
 21
 Affirmed.
 
 
 
 [1]
 James M. Switzer and Holman O'Connor are herein referred to as petitioners and taxpayers. Their wives are included as parties to the action solely because of the filing of joint returns. The Commissioner has filed protective petitions for review to assure that twe corporate petitioners will not be permitted to deduct the payments in question if the decisions of the Tax Court are reversed