**Rudolph L. GROSS and Catherine D. Gross, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 22023.**

United States Court of Appeals Ninth Circuit.

Oct. 7, 1968.

Dean M. Alexander (argued), Portland, Or., for appellant.

Chester C. Davenport, Jr. (argued), Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Lee A. Jackson, Grant Wiprud, Dept. of Justice, Washington, D. C., for appellee.

Before BARNES and MERRILL, Circuit Judges, and McNICHOLS, District Judge.

BARNES, Circuit Judge:

This is a petition for review of a tax court decision that taxpayers' losses from non-repayment of loans were not proximately related to any trade or business conducted by taxpayers as individuals, and hence were not fully deductible as business bad debts but were qualified, in a limited manner, as nonbusiness bad debts (See 166 Internal Revenue Code of 1954) [1] and Treasury Regulations

---

[1]. Internal Revenue Code of 1954:

Section 166 [As amended by Sec. 8, Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606].

BAD DEBTS.

(a) *General Rule.*—

(1) *Wholly worthless debts.*—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

(2) *Partially worthless debts.*—When satisfied a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *

(d) *Nonbusiness Debts.*—

(1) *General rule.*—In the case of a taxpayer other than a corporation—

(A) subsections (a) and (c) shall not apply to any nonbusiness debt; and

(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.

(2) *Nonbusiness debt defined.*—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

§ 1.166–5.[2] Tax years 1958 and 1961 are involved.

Petitioners organized, and had invested, (with one Burt Wilson) $30,000 in a corporation, Union Finance Co. The stockholders made advances to the corporation, totaling $55,000, which were treated as loans to the corporation by both the corporation and the lenders, thus enabling Union to enlarge its line of credit with its bank. The notes to the lenders were subordinated to the bank credit and bore interest at 8% or 10%.

These notes were found by the tax court to be nonbusiness bad debts, which did not become worthless until 1962. In October, 1961, the heirs of Burt Wilson had filed suit against petitioners and Union Finance Co., seeking a receivership and an accounting. A receiver was appointed and subsequently the bank discontinued its line of credit and Union Finance was liquidated in 1962.

These $55,000 in Union notes were claimed as business bad debts in 1961, as well as the following sums:

| DEBTOR | AMOUNT |
|---|---|
| Chester March | $   775.00 |
| Jack Finley | 240.00 |
| Ros Morrison | 8,884.73—8% unsecured |
| Finley Steel Erectors | 2,165.44 |
| North Bend Veneer, Inc. | 2,815.30 |
| | $14,880.47 |

Thus, the total loans claimed as business bad debts in 1961 totaled $69,880.47. These loans were held by the tax court to be nonbusiness bad debts in 1961, with deduction limited to $1,444.33 (§§ 1211 & 1212, 1954 Code).

In his 1960 and 1961 returns, taxpayer claimed he was in the separate business of "loans." He testified before the tax court that between 1957 and 1962 he had loaned approximately $30,000 to various friends, customers of Union or corporations in which petitioner had a stock interest. The checks representing these "loans" were sometimes marked "loans" —sometimes not. There was actually no note or other recognition of debt signed by the borrower; no rate of interest or

2. (26 U.S.C.1964 ed., Sec. 166.)
   Treasury Regulations on Income Tax (1954 Code):
   § 1.166–5 Nonbusiness debts.
   (b) *Nonbusiness debt defined.* For purposes of section 166 and this section, a nonbusiness debt is any debt other than—
   (2) A debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.
   The question whether a debt is a nonbusiness debt is a question of fact in each particular case. The determination of whether the loss on a debt's becoming worthless has been incurred in a trade or business of the taxpayer shall, for this purpose, be made in substantially the same manner for determining whether a loss has been incurred in a trade or business for purposes of section 165(c) (1).

   For purposes of subparagraph (2) of this paragraph, the character of the debt is to be determined by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in the conduct in the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt comes within the exception provided by that subparagraph. The use to which the borrowed funds are put by the debtor is of no consequence in making a determination under this paragraph. For purposes of section 166 and this section, a nonbusiness debt does not include a debt described in section 165(g) (2) (C). § 1.165–5, relating to losses on worthless securities. (26 C.F.R., Sec. 1.166–5.)

date of maturity was fixed; and no security given for repayment. There was never any offering of loans to the public by the taxpayers. At best, this seems a strange way to run a loan business.

Taxpayer himself testified that all his advances to individuals were made to secure new customers or to strengthen existing customers of Union Finance, and that he had fought to protect his investment in the corporation and still obtain interest on his money. He did not testify he made advances to protect his employment.

Actually, taxpayer, with his wife, owned 50% of the Union Finance stock and hence a controlling interest in its operations, if not a majority interest. As in any closely held corporation, it seems logical that his dominant interest was to protect his and his wife's investment, and was only incidentally to protect his employment.

As we have said, many of his advances to customers were not interest bearing. All of his four advances to corporations were to those in which he had previously invested. (I.R. 34) He reported (in 1961) interest received for 1960 (without itemization) of $3,862.39 and for 1961 interest received (without itemization) of $3,696.96. We note that 8% on $55,000 would have produced more interest than that returned as received.

When asked about financial transactions he characterized as "business transactions" or "loans" (which could only be substantiated by his checks) and for which there were no notes in existence, he said the following:

"Q. How did you know when there was no note how much interest you would get?

A. How did I know?

Q. Yes.

A. When I got the money back I would say you owe me the interest for this amount.

Q. How much would that interest be?

A. Well, we would agree upon it at the time."

But, asserts petitioner, no matter how he may have conducted his "business" as a money lender on his own account, the record shows "that he did in fact make over 140 loans to some 25 entities from 1955 to 1962, aggregating in excess of $130,000." [3]

We have listed above $69,888.47 of the "bad" loans, claimed as a loss in 1961, with the recipients of the moneys named.

In addition, in 1961, petitioners held three unpaid notes:

| DATE | AMOUNT | OBLIGOR | RATE | UNSEC. |
|---|---|---|---|---|
| 1/26/61 | $8,900. | Ros Morrison | 8% | " |
| 8/31/61 | 500. | Sam Osmundson | 6% | Sec. |
| 1/29/59 | 4,000. | F. D. Windsor | 7% | Sec. |

Petitioner had loaned, and been repaid by the obligor as follows:

| DATE | AMOUNT | OBLIGOR | RATE | UNSEC. |
|---|---|---|---|---|
| 9/7/56 | $2,720.50 | Peter LaConde | 10% | Unspecified |
| 11/22/60 | 35. | Frank Patterson | 6% | Unsec. |

Petitioner had also issued various checks from 1957 to 1962 (some marked loans), totaling $30,000, and all asserted worthless in 1961, which checks had been

3. In this connection, we note that the first time petitioner Gross claimed he was in the business of "loans" was in his 1960 and 1961 Income Tax Returns, when he filed Schedule 1040C forms.

(The return for 1960 was undated but stamped received in the District Director's office in Portland on May 8, 1961.)

issued to Arthur Lehmans, Clarence and Beulah Clinton, Mary Bergdorf, Harold Keller, Gerald and Lueen Smith, L. W. Taylor, Michael P. O'Brien, Baby Furniture, Inc., North Bend Veneer Co., Hitch Hiker Co., Finley Steel Elevators, Jack Finley, C. H. March, Fred Marks, Alpha Auto Sales, and C. D. Kamp. These were the loans made either to customers of Union, or corporations in which petitioner had a substantial stock interest, as mentioned above.

Petitioner emphasizes that the key problem in this case is the proper classification of the loans. We agree. He relies on this court's opinions in previous cases including Lundgren v. Commissioner of Internal Revenue, 376 F.2d 623 (1967) and Maloney v. Spencer, 172 F.2d 638 (1949). In the latter case, we affirmed the factual finding of the district court that there the petitioner was engaged "in the business of acquiring, owning, expanding, equipping and leasing food processing plans." We held that finding was not clearly erroneous, despite the fact the petitioner was the sole stockholder of the borrowing corporations, and the advances were on open accounts, and not entirely represented by notes of the corporation.

In *Lundgren,* supra, we reversed the tax court's determination of facts. It had been "based primarily" (376 F.2d at 626) on the fact that "outside sources would not have made the advances." Id. But we cautioned that "[t]here are no rules of thumb by which to determine the debt versus equity question * * *. The answer depends on the particular circumstances of each case." Id. And, we emphasized the *contemporaneous* written treatment of the transaction by each of the parties, as an indication of the parties' real intent as to the nature of the transaction. This aids the petitioner in some but far from all, of the alleged "loan" transactions here considered.

Nor can we hold facts herein demonstrate that the petitioner was in a separate business of promoting corporations for a fee or commission, or of developing corporations into a thriving business, and then selling them to start another. We think, therefore, that Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1962) controls.

There the Supreme Court in interpreting provisions of the 1939 Internal Revenue Code (§§ 23(k) (1) and 23(k) (4) comparable to those appearing in the 1954 Code) said at 195:

"The question before us is whether petitioner's activities in connection with several corporations in which he holds controlling interests can themselves be characterized as a trade or business so as to permit a debt owed by one of the corporations to him to be treated within the general rule * * * as a 'business' rather than a 'nonbusiness' bad debt."

The Court continued, at 202:

"If full-time service to one corporation does not alone amount to a trade or business, which it does not, it is difficult to understand how the same service to many corporations would suffice."

The taxpayer's argument was held "untenable in light of Burnet [v. Clark, 287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397 (1932)], Dalton [v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389] (1932), [Deputy v.] du Pont [308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940)] and Higgins [v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941)], and we reject it * * * [a]bsent substantial additional evidence * * *." Whipple v. Commissioner of Internal Revenue, supra, at 203, 83 S.Ct. at p. 1174.

In summation, we conclude the record clearly warrants the findings of the tax court that petitioners were not engaged in a separate business of money lending, or of promoting and financing corporations, and that they sought to protect their capital rather than the husband's employment. We cannot hold such find-

ings clearly erroneous. Higgins v. Commissioner of Internal Revenue, supra; Lundgren v. Commissioner of Internal Revenue, supra, 376 F.2d at 627.

We deny the review sought and affirm the tax court's decision.