The **HARTMAN TOBACCO COMPANY,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 123, Docket 72–1512.

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 1972.

Submitted to the Court en banc
Dec. 11, 1972.

Decided Jan. 10, 1973.

Harry L. Nair, Hartford, Conn., for plaintiff-appellee.

Janet R. Spragens, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Thomas L. Stapleton,

**1328**

Tax Div., Dept. of Justice, on the brief), for defendant-appellant.

Before FRIENDLY, Chief Judge, and MOORE, KAUFMAN, HAYS, FEINBERG, MANSFIELD, MULLIGAN, OAKES and TIMBERS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut holding that the taxpayer, Hartman Tobacco Co., was entitled to capital gains treatment on a transfer by the taxpayer of the right to remove sand and gravel from its land in consideration for a fixed price per cubic yard removed together with a minimum guaranteed payment. Appellants argue that although the agreement was cast as a sale, the taxpayer retained an economic interest in the property, and consequently, the income from the transfer should be taxed as ordinary income.

The appellee, Hartman Tobacco Co., has several farms in the Connecticut Valley on which it grows shade leaf tobacco. One of these is the Driscoll Farm on which the taxpayer has raised tobacco since 1928. On May 10, 1963, the taxpayer entered into an agreement with Roncari Industries, Inc., a corporation engaged in the sand and gravel extraction business under the terms of which Roncari obtained the right to extract sand and gravel on certain specifically designated areas of the Driscoll Farm. The agreement provided that Roncari should pay Hartman for all sand and gravel extracted in equal monthly installments at the rate of 23 cents per cubic yard, but no less than a minimum of $15,000 per annum, over a period of ten years. Payments were to be made whether or not Roncari removed any sand or gravel. There was also a provision for extending the agreement beyond the ten year period.

The taxpayer treated the payments received from Roncari as long term capital gains in its income tax return for 1964. The Commissioner determined that the payments received from Roncari were royalties measured by production and were therefore to be treated as ordinary income, not capital gains. The District Court disagreed with the Commissioner and held that the payments were taxable as long term capital gains. In reaching this result the district court declared itself bound by the decision of this court in Barker v. Commissioner, 250 F.2d 195 (1957).

The only issue presented for decision is whether the payments received by Hartman as a result of the agreement with Roncari should be treated for tax purposes as long term capital gains or as ordinary income. In answering this question we must consider whether (1) the taxpayer retained an "economic interest" in the sand and gravel and (2) whether the economic interest test for determining capital gains treatment is applicable to hard minerals such as sand and gravel.

■ The mining of natural resources is not usually considered to be a severance and sale of capital assets warranting capital gains treatment. In such situations, the taxpayer will ordinarily retain an economic interest in the resources and the transaction will not amount to a sale. Broadly speaking, the taxpayer will retain an economic interest in the resources if the consideration he receives is tied to the production of the resource. However, a taxpayer can receive capital gains treatment if there is a complete and total alienation of his entire interest.

■ We think it clear that the Hartman Tobacco Company did retain an economic interest in the sand and gravel. As the Fifth Circuit said in Wood v. United States, 377 F.2d 300 (5th Cir.), cert. denied, 389 U.S. 977, 88 S.Ct. 465, 19 L.Ed.2d 472 (1967), in determining whether the taxpayer retained an economic interest in the natural resources—

". . . the critical consideration is whether payment is dependent upon extraction . . . . " 377 F.2d at 306.

See Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933); Freund v. United States, 367 F.2d 776 (7th Cir. 1966).

Under the contract here involved the payment of 23 cents per cubic yard of sand and gravel removed was directly tied to production. The payments were dependent on extraction and were required not only to the extent of the minimum provided but to extraction beyond that minimum.

The provision for minimum payments did not alter the relationship to production. Under such contracts the minimum payments are to be considered advance royalties or advances for future amounts to be earned by continued production. Thus if in a particular month Roncari extracted less than the amount represented by the minimum payment, the payment was to be applied to any extraction in excess of the minimum in subsequent months. As the Fifth Circuit said in *Wood:*

> "Taxpayer next argues that, even if the royalty payments are based upon production, the presence of minimum guaranteed royalty provisions in the agreement, requires a finding that his income was not based solely upon production as required by the economic interest test. This contention is without merit as the courts have stated many times that a minimum royalty, such as that present in this case, is merely an advancement for future payments in the form of a guarantee and does not render payment dependent upon a factor other than extraction or production." (footnotes omitted). 377 F.2d at 307.

The application of the economic interest test is not affected by the fact that the agreement was written as a sale rather than as a mineral lease. As this court said in Royalton Stone Corp. v. Commissioner, 379 F.2d 298 (2d Cir.), cert. denied, 389 U.S. 978, 88 S.Ct. 471, 19 L.Ed.2d 473 (1967),

> "The provisions of the agreements designating the transactions as 'purchases' and 'sales' are, of course, not conclusive. In order to determine the tax consequence of the transactions, we must look to their essential character rather than their form."

The cases in which the Supreme Court developed the economic interest test dealt with the extraction of oil and gas. E. g., Palmer v. Bender, supra. Early decisions in various Circuits did not apply the economic interest test to hard minerals. See Linehan v. Commissioner, 297 F.2d 276 (1st Cir. 1961); Barker v. Commissioner, supra. These decisions stressed the language of sale in the contract and allowed capital gains treatment of the income derived from the extraction of hard minerals such as sand and gravel. However, these opinions refusing to apply the economic interest test to hard minerals have been sharply criticized by both courts and commentators. E. g., Wood v. United States, supra, 377 F.2d at 309; Comment, Sale or Lease? Disparate Tax Treatment of Mineral Transactions by Courts Based on Nature of Minerals Involved, 42 Tex.L.Rev. 707 (1964). In the past decade the issue of whether amounts paid to landowners under hard mineral extraction agreements may be treated as capital gains has been passed upon in a number of circuits. The courts have applied the economic interest test, either explicitly or implicitly, and have rejected capital gains treatment of the income derived from the agreement, whether or not the agreement was cast in terms of a sale. E. g., Oliver v. United States, 408 F.2d 769 (4th Cir. 1969); Rutledge v. United States, 428 F.2d 347 (5th Cir. 1960); Hair v. Commissioner, 396 F.2d 6 (9th Cir. 1968); Alkire v. Riddell, 397 F.2d 779 (9th Cir. 1968); United States v. White, 401 F.2d 601 (10th Cir. 1968).

This court most recently dealt with this issue in Royalton Stone Corp. v. Commissioner, supra. This case involved an agreement, the terms of which were cast in the form of a sale of sand and gravel in place. This court held the income derived from the agreement to be ordinary income, not capital gains. Although the court did not specifically

adopt the economic interest test or explicitly overrule *Barker,* supra, the decision did cite with approval several cases which had accepted the economic interest test such as Wood v. United States, supra. Moreover, the basic rationale of the *Royalton* decision is consistent with the application of the economic interest test.

■ Given this background, we think it best to clear up any confusion on the issue that there may be in this circuit and to align the Second Circuit with every other circuit which has confronted the question. We therefore overrule the *Barker* decision and adopt the economic interest rule as the test for determining the tax treatment of income derived from hard mineral extraction agreements.

Reversed.

MOORE, Circuit Judge (dissenting):

In 1957 this Court held in a case involving the sale of sand and gravel (a situation identical to that now before us) that the proceeds of such sale from an income tax standpoint should be taxed as long-term capital gains and not as royalties, that is, as ordinary income. Barker v. Commissioner, 250 F.2d 195 (2d Cir. 1957).

In 1963, no other reported case having passed upon the identical question in the interim, *Barker* still stated the law in this Circuit. The parties to the agreement involved in this case cast their agreement in a form similar to that in *Barker,* and they were entitled to expect that the law therein declared still applied. Accordingly, in its income tax return for 1964 Hartman reported payments received as capital gains.

Three years later, in 1967, cases arose in which a different interpretation was given to the tax consequences of the extraction of sand and gravel (Wood v. United States, 377 F.2d 300 (5th Cir. 1967)) and the quarrying of stone (Roy-alton Stone Corp. v. Commissioner, 379 F.2d 298 (2d Cir. 1967), cert. denied, 389 U.S. 978, 88 S.Ct. 471, 19 L.Ed.2d 473 (1967)).

Now the question comes before us in 1973: What was the law in this Circuit in 1963 on which the taxpayer was entitled to rely? If in 1963 a statute had been in effect which provided that the proceeds of the sale of sand and gravel were to be regarded as capital gains, there could be no dispute that a 1973 statute repealing the former statute could not declare the proceeds from the sale of this sand and gravel under a 1963 arrangement to be ordinary income. Had the legislature desired to change the law, it would have fixed a prospective date on which the statute would have become effective and, thus, all parties could have conducted their business affairs accordingly. Nor can there be any serious doubt that if the Commissioner had attempted to apply the 1973 law to 1963 transactions he would not have prevailed in the courts.

Just as this result would not be possible under legislative law, so it should not be possible under judicially made law.

If the Court now desires to change its law and to adopt the views of other circuits by overruling *Barker,* this, of course, is its privilege; but the Court by judicial legislation should not be able to do that which Congress could not do by repeal.

Much has been written regarding the doctrine of prospective overruling. The sound reasons therefor and the many cases bearing on the subject have been collected in the scholarly address of Justice Walter V. Schaefer of the Illinois Supreme Court in his Benjamin N. Cardozo Lecture (Ass'n of the Bar of The City of New York, April 13, 1967) entitled: "The Control of 'Sunbursts' *: Techniques of Prospective Overruling." *See also* "Overruling Decisions—Application," 10 A.L.R.2d 1371.

---

* Referring to Great Northern Ry. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

Particularly is prospective applicability important in the field of taxation and related business situations in which decisions have been made·in reliance on the law as then written. As a Court we should be willing to accord a certain amount of "full faith and credit" to our decisions and yet at the same time retain the right to change our collective mind when greater light illuminates more brightly the path we choose to follow in the future. I am not willing to hold that the *Barker* panel wrote under inadequate illumination. Although joining the majority in their belief that it is time for a change, I would hold that Hartman was entitled to rely on the law as it was at the time of its sand and gravel transaction.

To this extent I must dissent.