T.C. Memo. 2015-128

UNITED STATES TAX COURT

JAMES BONEPARTE, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2452-14.                    Filed July 13, 2015.

James Boneparte, Jr., pro se.

<u>Kathleen K. Raup</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined a deficiency of $13,187 and a
penalty of $2,637 under section 6662(a) with respect to petitioner's Federal
income tax for tax year 2010.  Unless otherwise indicated, all section references
are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule

[*2] references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

After concessions,[1] the issues for consideration are whether petitioner: (1) was a professional gambler during 2010, entitling him to deduct his gambling losses and expenses on his amended Schedule C, Profit or Loss From Business; (2) was entitled to deductions on his amended Schedule A for medical transportation expenses under section 213(a) and for $25,000 of gambling losses; (3) is entitled to deduct several nonbusiness bad debts; (4) is liable for a 10% additional tax under section 72(t); and (5) is liable for an accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts are stipulated and are so found. Petitioner received mail at a post office box in New Jersey at the time the petition was filed.

Petitioner was employed full time by the Port Authority of New York and New Jersey (Port Authority) as a tunnel bridge agent. During 2010 he generally

---

[1]With the exception of the deduction for State and local taxes, petitioner conceded that he was not entitled to the deductions claimed on Schedule A, Itemized Deductions, on his originally filed Form 1040, U.S. Individual Income Tax Return. Petitioner filed an amended Schedule A along with a Form 1040X, Amended U.S. Individual Income Tax Return, which respondent did not accept.

[*3] worked from 2 p.m. to 10 p.m., working four days on, two days off, four days on, two days off, five days on, two days off.

Petitioner did not maintain a permanent residence. Instead, he kept a storage locker in New Jersey where he would keep his personal belongings. Generally, after his shift at the Port Authority was over, he would drive approximately 125 miles to Atlantic City and check in at a casino hotel to stay the night and gamble. If he had work at the Port Authority the next day, he would depart at 10 a.m. to return to the Port Authority to perform his duties.

During 2010 petitioner gambled in casinos and at horse racetracks. At the casinos his preferred game was baccarat, but he also played slots as well as other table games. He gambled primarily in Atlantic City, but he also gambled at other venues across New Jersey, Nevada, California, Arizona, Maryland, Florida, and Connecticut. He did not keep a contemporaneous written log of wins and losses for any of his gambling activities. Rather, he would keep a running ledger in his head. Some of the casinos would also track his gambling activity, but they would provide only averages over time rather than precise amounts.

While petitioner was gambling in Atlantic City, he became friends with another frequent gambler. The two would discuss strategy, and the friend taught

[*4] petitioner about some aspects of the gambling world. They would travel together to various destinations to gamble.

On August 25, 2010, petitioner fractured his right wrist while at the Port Authority. Although he was unable to work for the rest of the year, he continued to receive his full salary because he was injured on the job. Petitioner's wrist injury required a visit to the emergency room on the day of the injury and at least 10 more visits to the hospital for treatment. With respect to his wrist injury, petitioner's employer's insurance paid his medical bills but not his transportation costs. Petitioner also visited the dentist in 2010.

During 2010 petitioner defaulted on a loan of $12,178 from his qualified retirement plan.

Original 2010 Tax Return

Petitioner timely filed his 2010 Form 1040. He reported income of $92,310. This income comprised $76,779 from his wages, $3,353 from his tax refund, and $12,178 as a deemed distribution from his qualified retirement plan. He did not report any gambling winnings. He claimed various Schedule A deductions totaling $66,297. These deductions included a medical expense deduction, a home mortgage interest deduction, a State and local tax deduction, a charitable contribution deduction, and miscellaneous deductions. He did not deduct any

**[\*5]** gambling losses. He reported a total tax liability of $4,156. This liability included a 10% additional tax under section 72(t) of $1,218 for the deemed retirement plan distribution.

On September 4, 2012, respondent sent petitioner a letter explaining that petitioner's 2010 tax return had been selected for audit and requesting documentation to support the claimed Schedule A deductions.

Amended 2010 Tax Return

On September 30, 2013, after the parties exchanged various letters and documents, petitioner mailed respondent a Form 1040X. Respondent did not accept the amended return.

On the Form 1040X petitioner claimed the following Schedule A deductions:

| Schedule A | Amount claimed |
|---|---|
| Medical travel expenses | $14,043 |
| Taxes | 8,891 |
| Gambling losses-- other miscellaneous deductions | 25,000 |
| Total | 47,934 |

[*6]   On the Form 1040X petitioner claimed that he was a professional gambler with the following Schedule C income and expenses:

| Schedule C | Amount claimed |
| --- | --- |
| Income: | |
| Gross receipts | $25,000 |
| Returns | 25,000 |
| Gross income | -0- |
| Expenses: | |
| Car and truck | 23,000 |
| Add'l car and truck | 16,300 |
| Depreciation | 2,850 |
| Add'l depreciation | 2,850 |
| Insurance | 4,868 |
| Legal and professional services | 6,500 |
| Office | 1,020 |
| Rent of vehicles, machinery, equipment | 275 |
| Rent of other business property | 1,128 |
| Repairs and maintenance | 2,208 |
| Supplies | 3,900 |
| Travel | 12,634 |

**[\*7]** Deductible meals
 and entertainment 14,166

Total [1]91,699

Net income (91,699)

[1]On the return petitioner reports this amount as $91,707.

Petitioner also deducted the following amounts as nonbusiness bad debts:

| Name | Relationship | Amount |
|------|-------------|--------|
| Erin Liburd | Friend | $6,500 |
| LaShana Boneparte | Daughter | 5,000 |
| Keith Boneparte | Son | 2,000 |
| Freddie Boneparte | Brother | 4,000 |
| Marcia Bentham | Friend | 3,400 |

Petitioner claimed zero tax liability and requested that his claimed overpayment of $3,429 be applied to 2009. This amount did not include the 10% additional tax resulting from an early withdrawal of retirement moneys pursuant to section 72(t).

On November 12, 2013, respondent issued the notice of deficiency. The notice disallowed petitioner's claimed Schedule A medical expense deduction, home mortgage interest deduction, charitable contribution deduction, and miscellaneous deductions from his original return. Respondent did not dispute petitioner's State and local tax deduction.

**[*8]**                                   OPINION

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer likewise bears the burden of proving his entitlement to deductions allowed by the Code and of substantiating the amounts of items underlying claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Under section 7491(a), in certain circumstances, the burden of proof may shift from the taxpayer to the Commissioner. Petitioner has not claimed or shown that he meets the requirements of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue. The burden of proof remains with petitioner.

I.      Professional Gambler

The parties disagree about whether petitioner was engaged in the trade or business of gambling. Petitioner contends that he was a professional gambler and that as a result he is entitled to deduct his gambling-related expenses and losses on his Schedule C. Respondent determined that petitioner engaged in gambling as a hobby, not as a business.

**[*9]** Section 61(a) defines gross income to mean all income from whatever source derived. Gambling winnings are includable in gross income. Lyszkowski v. Commissioner, T.C. Memo. 1995-235, aff'd without published opinion, 79 F.3d 1138 (3d Cir. 1996).

Section 162(a) allows deductions for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. If a taxpayer is engaged in the trade or business of gambling, his losses from gambling, up to the amounts of his gains from such transactions, are deductible in arriving at his adjusted gross income. See secs. 62(a)(1), 165(d). However, expenses incurred while carrying on the trade or business of gambling other than wagering losses are not subject to the section 165(d) gambling loss restriction. Mayo v. Commissioner, 136 T.C. 81, 97 (2011).

To be a professional gambler, the taxpayer must have engaged in gambling with the objective of making a profit. Sec. 183(a), (b), and (c); Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be actual and honest. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit

**[\*10]** objective is a question of fact to be answered from all of the relevant facts and circumstances. Hastings v. Commissioner, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs.

The pertinent regulations set forth a nonexhaustive list of factors that may be considered in deciding whether a profit objective exists. These factors include: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.; see also Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981). No single factor or group of factors is determinative. Golanty v. Commissioner, 72 T.C. at 426. While the focus of the test for whether a taxpayer engaged in an activity with the intent to make a profit is on the subjective intent of the taxpayer, greater weight is given to objective facts than to the taxpayer's mere statement of his or her intent. Sec. 1.183-2(a), Income Tax Regs.; see also

[*11] <u>Stasewich v. Commissioner</u>, T.C. Memo. 2001-30. A final determination is made only after a consideration of all of the relevant facts and circumstances.

We do not believe it necessary to analyze each of the factors enumerated in section 1.183-2(b), Income Tax Regs., to determine whether petitioner engaged in his gambling activities with an actual and honest objective of making a profit. Rather, we focus on the factors we believe more important and applicable in this case.

A.    <u>Manner in Which the Taxpayer Carries On the Activity</u>

The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records, may indicate a profit motive. <u>Id.</u> subpara. (1).

Petitioner did not maintain complete and accurate records of his gambling activity. He testified that he kept only a running total in his head. The handwritten records he provided were not kept contemporaneously but rather were created while his return was being audited. He did not testify that he spent any time honing or adjusting his system or attempting to improve his profitability by adopting new methods. Accordingly, he did not carry on his gambling activity in a businesslike manner. This factor weighs against petitioner.

**[*12] B.    Expertise of the Taxpayer or His Advisers**

Preparation for the activity by extensive study of its accepted business practices, or consultation with those who are expert therein, may indicate a profit objective where the taxpayer carries on the activity in accordance with such practices. Id. subpara. (2).

Petitioner testified that he spent time with one friend who also frequently gambled. He testified that they took at least one trip together and would talk strategy and that he was learning the "ins and out of how to gamble". Although petitioner testified that he "created a system" for gambling on the game of baccarat, we are not persuaded that he achieved any level of expertise. See Merkin v. Commissioner, T.C. Memo. 2008-146. This factor weighs against petitioner.

**C.    Taxpayer's Success in Carrying On Other Similar or Dissimilar Activities**

The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that the activity in question was engaged in for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.

[*13] Petitioner provided no evidence of history of success with business activities other than working as an employee of the Port Authority. There is no evidence that his success in this field paved the way for success as a gambler. This factor weighs against petitioner.

### D. Taxpayer's History of Income or Losses

"A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit." Id. subpara. (6). However, if a taxpayer continues to sustain losses beyond the period which customarily is necessary to bring the operation to profitable status, such continued losses, if not explainable, may indicate that the activity is not engaged in for profit. Id. The "goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years." Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), aff'd, 379 F.2d 252 (2d Cir. 1967).

Petitioner testified that he worked at the Port Authority for over 30 years and that he had been gambling for about 11 years. He provided no evidence regarding his history of income or losses from gambling. As petitioner is the party with the burden of proof, this factor weighs against him.

**[*14]** E.     Taxpayer's Financial Status

"The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit." Sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from sources other than the activity, particularly if the losses from the activity generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Id.

Petitioner earned $76,779 as an employee of the Port Authority during 2010.  He derived the bulk of his income from the Port Authority.  If he is permitted to deduct his gambling-related expenses from his Port Authority income, his taxable income will be significantly reduced.  See Moore v. Commissioner, T.C. Memo. 2011-173 (taxpayer's financial status did not indicate profit motive when he derived bulk of income from employment outside of gambling).  This factor counts against petitioner.

F.     Elements of Personal Pleasure or Recreation

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are elements of recreation or personal pleasure.  Sec. 1.183-2(b)(9), Income Tax Regs.

**[*15]** Petitioner testified that he enjoys gambling. This factor weighs against petitioner.

Considering all the facts and circumstances and weighing the factors analyzed above, we hold that petitioner did not conduct his gambling activity in a businesslike manner and he did not engage in that activity with the requisite profit objective during the year at issue. Accordingly, we sustain respondent's determination that petitioner is not entitled to deductions under section 162(a) for gambling-related expenses.

## II.    Schedule A Deductions

On his amended Schedule A petitioner deducted medical transportation costs and $25,000 of gambling losses. Respondent contends that petitioner is not entitled to either of these deductions.[2]

### A.    Medical Transportation Expense Deductions

Petitioner claims that he is entitled to deduct his transportation costs for medical care for 2010. Respondent does not dispute that petitioner made several trips to the hospital and to the dentist's office in 2010. Rather, respondent contends that petitioner has not substantiated the expenses underlying the

---

[2]Petitioner also deducted $8,891 for State and local taxes on his amended Schedule A. This deduction is the same as the one claimed on his original Schedule A, and respondent does not dispute it.

[*16] deductions he claimed for the miles driven, toll fees, and parking expenses. Additionally, it appears that petitioner also deducted a per diem using Publication 1542, Per Diem Rates, for each day he went to the hospital. As respondent disallowed petitioner's deduction in full, we infer that respondent also contends that petitioner is not entitled to deduct per diem amounts.

Section 213(a) allows a deduction for expenses paid during the taxable year, not compensated by insurance or otherwise, for medical care of the taxpayer to the extent that such expenses exceed 7.5% of the taxpayer's adjusted gross income. Of relevance here, the term "medical care" includes amounts paid "for transportation primarily for and essential to medical care". Sec. 213(d)(1)(A) and (B). Transportation primarily for and essential to medical care is deductible at a set mileage rate. The standard mileage rate for medical transportation was 16.5 cents per mile for 2010. Rev. Proc. 2009-54, sec. 2.01(3), 2009-51 I.R.B. 930.

A taxpayer is generally required to keep sufficient records to enable the Secretary to determine the taxpayer's correct income tax liability. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. To substantiate medical and dental expenses, a taxpayer must furnish the name and address of each payee, the amount of the expense, and the date paid. Sec. 1.213-1(h), Income Tax Regs.

[*17] Petitioner claimed itemized deductions for medical and dental transportation expenses of $14,043 for the taxable year 2010. He contends that he took 31 trips for medical purposes in 2010 and that for each of these trips he drove 250 miles round trip from Atlantic City to the hospital or dental offices, incurred parking fees of $20, and paid toll fares of $25, for a total of $14,181 in transportation expenses. He then "pro rated" this amount by multiplying it by 0.75 to arrive at $10,636 of medical transportation expenses. Finally, using Publication 1542, he allotted himself a $166 per diem for each day he traveled to the doctor for a total of $5,146. He added this amount to the $10,636 for a total amount of $15,782. He then reduced this amount by 7.5% of his adjusted gross income to arrive at the $14,043 deduction that he claimed on his amended return.

Petitioner provided no receipts or mileage logs to substantiate the claimed mileage, tolls, and parking expenses. There is no evidence that the handwritten ledgers that he did provide detailing these expenditures were prepared contemporaneously or were otherwise reliable. See Adams v. Commissioner, T.C. Memo. 2013-92.

Additionally, petitioner is not entitled to deduct any per diem expenses for costs incurred while traveling to receive medical care. Publication 1542 provides Federal per diem allowances that apply only to employers for reimbursements of

[*18] lodging, meals, and incidental expenses.  See IRS Publication 1542. Because petitioner is not an employer, such an allowance is inapplicable to him. Accordingly, he is not entitled to deduct per diem amounts for the days he traveled to the hospital.

### B.    Gambling Loss Deduction

Petitioner also deducted $25,000 of "Gambling Losses" on his Schedule A. Respondent contends that this deduction was improper and the losses were not substantiated.

Gambling losses of nonprofessional gamblers are deductible as an itemized deduction in arriving at taxable income.  Sec. 63(a); Calvao v. Commissioner, T.C. Memo. 2007-57.  However, gambling losses deducted as an itemized deduction on Schedule A are allowed only to the extent of any gambling winnings.  Sec. 165(d); Sec. 1.165-10, Income Tax Regs.

Petitioner did not keep contemporaneous records of his winnings and losses. He testified that he based his reported casino wins and claimed losses on averages provided to him by the casinos which he conceded were not "exact monetary amount[s]" but rather were averages.  He provided handwritten itemized lists of the days and amounts where he won and lost gambling on horse racing but has not provided any additional documentation to indicate where this information came

[*19] from and to establish its accuracy. Petitioner has not substantiated his losses. Further, even if his losses were substantiated, he did not report any winnings on his Schedule A. Given that losses are deductible only to the extent of winnings, petitioner would not be entitled to deduct his purported $25,000 of losses.

## III.   Nonbusiness Bad Debts

Petitioner claims he is entitled to deduct several nonbusiness bad debts for loans that he made to Erin Liburd, LaShana Boneparte, Keith Boneparte, Freddie Boneparte, and Marcia Bentham. Respondent contends that none of these purported loans are bona fide debts.

Section 166(a)(1) allows as a deduction any bona fide debt that becomes worthless within the taxable year. For nonbusiness bad debt held by a taxpayer other than a corporation, section 166(a)(1) does not apply, and the taxpayer is allowed a short-term capital loss for the taxable year in which the debt becomes completely worthless. Sec. 166(d)(1); sec. 1.166-5(a)(2), Income Tax Regs. A bona fide debt is a debt that arises from "a debtor-creditor relationship based on a valid and enforceable obligation to pay a fixed or determinable sum of money." Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs. A gift is not considered a "debt" for purposes of section 166. Kean v.

[*20] Commissioner, 91 T.C. at 594. Whether a purported loan is a bona fide debt for tax purposes is determined from the facts and circumstances of each case. See Gross v. Commissioner, 401 F.2d 600, 603 (9th Cir. 1968), aff'g T.C. Memo. 1967-31; Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980). Factors indicative of a bona fide debt include whether: (1) evidence of indebtedness exists; (2) any security is requested; (3) there has been a demand for repayment; (4) the parties' records reflect the transaction as a loan; (5) any payments have been made; and (6) any interest was charged. See Sundby v. Commissioner, T.C. Memo. 2003-204.

Transactions between family members are subject to special scrutiny to determine whether a purported loan was actually a gift. Caligiuri v. Commissioner, 549 F.2d 1155, 1157 (8th Cir. 1977), aff'g T.C. Memo. 1975-319. A transfer between family members is presumed for tax purposes to be a gift. Perry v. Commissioner, 92 T.C. 470, 481 (1989), aff'd without published opinion, 912 F.2d 1466 (5th Cir. 1990); Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970). This presumption may be rebutted by an affirmative showing that there existed at the time of the transfer a real expectation of repayment and an intent to enforce the collection of the indebtedness. Estate of Van Anda v.

[*21] Commissioner, 12 T.C. 1158, 1162 (1949), aff'd per curiam, 192 F.2d 391 (2d Cir. 1951).

LaShana, Keith, and Freddie Boneparte are petitioner's daughter, son, and brother, respectively. Since they are all petitioner's family members, a transfer to any one of them is presumed a gift. Petitioner testified that he always expected them to pay him back. He did not provide any supporting evidence, including any loan documents or demands for repayment, that would indicate a real expectation of repayment and an intent to enforce collection. Accordingly, he has not rebutted the presumption and these payments are not bona fide loans.

Neither Marcia Bentham nor Erin Liburd was a family member, but petitioner still must show that those debts were bona fide. Petitioner testified that he always expected repayment. For the transfer to Marcia Bentham, petitioner did not provide any evidence other than his testimony. Petitioner failed to meet his burden with respect to this purported loan. For the purported loan to Erin Liburd, in addition to testimony, petitioner provided a promissory note executed by Mr. Liburd as well as bank deposit records showing that Mr. Liburd had transferred money to petitioner as repayment. The promissory note, dated March 28, 2011, states the following: "I Erin Liburd will be borrowing the amount of $7,000 from James Boneparte". (Emphasis added.) Not only is the promissory note dated well

[*22] after the close of the 2010 tax year, but the underscored words also indicate that the loan had not yet been granted in 2010. Additionally, the bank deposit records show that at the earliest Mr. Liburd made transfers to petitioner in May 2011. Taken together, the evidence does not support that a bona fide debt existed in 2010, let alone that such debt had become worthless.

Petitioner has not met his burden, and he is not entitled to deduct any of the purported bad debts.

## IV. Section 72(t) Additional Tax

A distribution from a qualified plan such as petitioner's is generally includable in the income of the distributee in the year of distribution. Sec. 402(a). If a participant or beneficiary of a qualified plan receives a loan from the plan, that amount is treated as a distribution in the year received unless it falls into one of several exceptions. See sec. 72(p)(2). If a plan fails to satisfy these requirements, a deemed distribution will occur at the first time those requirements are not satisfied, either in form or in operation. Sec. 1.72(p)-1, Q&A-4(a), Income Tax Regs.

Respondent and petitioner agree that petitioner defaulted on a loan of $12,178 from his qualified retirement plan and that petitioner therefore received an early distribution in 2010.

**[*23]** Section 72(t) provides for a 10% additional tax on early distributions from a qualified retirement plan for the taxable year in which such amount is received. Section 72(t)(2)(B) provides an exception to this rule: With exceptions not relevant here, an early distribution from a qualified retirement plan is not subject to the 10% additional tax to the extent it does not exceed "the amount allowable as a deduction under section 213 * * * for amounts paid during the taxable year for medical care (determined without regard to whether the * * * [taxpayer] itemizes deductions for such taxable year)." Section 213(a) in turn allows as a deduction "the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income."

Petitioner does not dispute that he received an early distribution from a qualified retirement plan in 2010. Rather, he asserts that the early distribution was used to pay his claimed medical transportation expenses and that he falls under the exception in section 72(t)(2)(B). As discussed supra Part II.A, petitioner is not entitled to deduct his claimed medical transportation expenses under section 213(a). Therefore, he does not fall under the exception in section 72(t)(2)(B) and he is liable for the 10% additional tax.

**[\*24]** V.    Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty pursuant to section 6662(a) for 2010.  Section 6662(a) provides a penalty for an underpayment attributable to negligence or disregard of rules or regulations within the meaning of section 6662(b)(1).

The Commissioner bears the burden of production regarding the taxpayer's liability for any penalty.  Sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Once the Commissioner has met this burden, the taxpayer must provide persuasive evidence that the Commissioner's determination was incorrect.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, to exercise due care, or to do what a reasonable and prudent person would do under the circumstances.  Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence also includes any failure by a taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  Respondent has demonstrated that petitioner failed to keep accurate records with respect to his claimed professional gambling activity, medical transportation expenses, gambling losses, bad debts, and use of early

**[*25]** withdrawn retirement funds.  Respondent has shown that petitioner acted negligently.

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith.  Sec. 6664(c)(1).  Petitioner did not show reasonable cause for failing to keep adequate books and records in order to substantiate items properly. We hold that petitioner is liable for a section 6662(a) penalty for negligence.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.