James J. CALIGIURI and Rose M. Caligiuri, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 76–1339.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1977.

Decided Feb. 18, 1977.

---

2. Judge Denney's opinion is unreported.

Marvin F. Peterson, Des Moines, Iowa, for appellants.

William S. Estabrook, Tax Div., Appellate Sec., Dept. of Justice, Washington, D. C., for appellee; Scott P. Crampton, Asst. Atty. Gen. and Gilbert E. Andrews, Richard W. Perkins, Washington, D. C., on brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and HANSON, Chief District Judge.*

BRIGHT, Circuit Judge. ˙

In this appeal from a decision of the United States Tax Court,[1] taxpayers James J. Caligiuri and Rose Caligiuri claim that the tax court erred (1) in denying them a deduction for a nonbusiness bad debt in the amount of $7,500 for the year 1958, see Int.Rev.Code of 1954, § 166(d); and (2) in determining that, when taxpayers sold their interest in Baxter Milling Service to a third-party buyer in 1961 for $87,500, and received as consideration $20,000 in cash and $67,500 in par value preferred stock in a new corporation organized by the buyer, the value of the preferred shares was $67,-500 rather than $1,000 as contended by taxpayers, see Int.Rev.Code of 1954, § 1001(b).

Taxpayers' contentions relating to the alleged bad debt, if sustained, entitle them to a short term capital loss deduction of $1,000 for 1958, and a similar deduction for ensuing years to the extent of the worthlessness established for that debt. The tax court denied the taxpayers' claim and we affirm.

Taxpayers, in questioning the valuation of the preferred stock received in the sale of the Baxter Milling Company in 1967, seek a net operating loss deduction carried back to 1964. See Int.Rev.Code of 1954, § 172. The tax court upheld the Commissioner's disallowance of the net operating

---

* WILLIAM C. HANSON, Chief Judge, United States District Court, Southern District of Iowa, sitting by designation.

1. The opinion of the tax court is unofficially reported as *Caligiuri v. Commissioner*, 34 CCH Tax Ct. Mem. 1386 (1975).

loss deduction based on the Commissioner's valuation of the preferred stock, received as part of the purchase price for Baxter Milling, at $67,500. We also affirm this determination.

## I. Bad Debt Deduction.

Taxpayer James J. Caligiuri testified that in 1954 he and his wife loaned $7,500 to his wife's brothers for use by the Crocker Poultry and Egg Company, a company owned and operated by three of Mrs. Caligiuri's brothers (Paul, James, and Anthony Leto), but Mr. Caligiuri was unsure whether the brothers-in-law gave a note in return for the advance. · Mr. Caligiuri admitted that the parties did not discuss a date when repayment was due, nor did they discuss interest. These brothers never paid any interest, and never repaid any part of the advance. Taxpayer Rose Caligiuri testified that she gave her brothers the $7,500 because they were in financial trouble, and, at the time, she and her husband had extra cash which they had been saving in order to buy a house and furniture. Mrs. Caligiuri described her agreement with her brothers as follows:

> Well, I'll tell you, they were losing money. They were going to pay me when they started making money. * * * [M]y husband kept saying you better start having them pay you. Well, they didn't have it to pay me. So, how could I get money off of them? I just couldn't.

A mortgage dated March 2, 1954, from Crocker Poultry to the taxpayers, was acknowledged and filed in the first week of August 1958. Approximately one week later, Crocker Poultry petitioned and was adjudged bankrupt. The referee in bankruptcy treated the Caligiuris' claim as an unsecured debt, and ordered that $749 be paid on the $7,500 advance.

The tax court, relying heavily on the portion of Mrs. Caligiuri's testimony quoted above, found that repayment of the advance was contingent upon the success of the Crocker Poultry Company, and thus was not a legally enforceable, bona fide debt.

We affirm the conclusion of the tax court that on the record of this case the taxpayers are not entitled to a § 166 nonbusiness bad debt deduction, but we do not endorse the tax court's reliance on Mrs. Caligiuri's testimony, quoted above, as a basis for denying the taxpayers' claim.

The Commissioner's determinations as to deductibility are prima facie correct, and the taxpayer has the burden of proving otherwise. E. g., Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); Elot H. Raffety Farms, Inc. v. United States, 511 F.2d 1234, 1238 (8th Cir. 1975), cert. denied, 423 U.S. 834, 96 S.Ct. 57, 46 L.Ed.2d 52. Thus, the taxpayers have the burden of establishing that: (1) a bona fide debt was owed to them, and (2) the debt became worthless in 1958.

All the facts and circumstances must be considered in determining whether the advance created a bona fide debt. Inasmuch as this alleged debt involves an intrafamily transaction, we must give particularly close scrutiny to the facts. The record reveals that the indicia of a bona fide debt are almost entirely lacking in this case. The record contains no note or other written evidence that the advance was intended to be a loan. The payment of interest was not required, and the loan was not due on a specific date. The money was advanced for use in the Crocker Poultry Company at a time when the business was operating at a loss, and no payments were ever made on the alleged loan. The taxpayers made no efforts to collect the alleged debt, other than to make a claim in bankruptcy on the Crocker Poultry Company. In light of this record, the finding that the $7,500 advance was not a bona fide debt is supported by substantial evidence, and is not clearly erroneous. See, e. g., Constantin v. Commissioner, 25 CCH Tax Ct. Mem. 166 (1966); Tanner v. Commissioner, 21 CCH Tax Ct. Mem. 646 (1962); and Hauser v. Commissioner, 19 CCH Tax Ct. Mem. 852 (1960).

Assuming, arguendo, that a bona fide debt existed, we doubt that the taxpayers established the worthlessness in 1958 of the alleged debt. The loan was made to

Mrs. Caligiuri's three brothers, James, Paul, and Anthony Leto, for use in their operation of Crocker Poultry. Crocker Poultry became a bankrupt in 1958, but no evidence establishes the insolvency of the three brothers in 1958.[2]

Because the questions arising here are factual, and the record supports the tax court's findings and determination, we affirm its denial to the taxpayers of a nonbusiness, bad debt deduction by reason of the $7,500 cash advance to Mrs. Caligiuri's brothers.[3]

## II. *The Valuation of Stock Issue.*

The tax court denied the taxpayers the capital loss deduction claimed on the sale of the Baxter Milling Company, rejecting the taxpayers' argument that the P & M Corp. preferred stock received from the buyers as part of the purchase price represented a nominal value of $1,000, rather than its book value of $67,500. The tax court in its discussion noted that the sale agreement specified a price of $87,500 for all the assets of Baxter Milling except the inventory. The individual buyers organized P & M Corp. contemporaneously with the transfer of assets from Baxter Milling Company to the new corporation. The corporate records of P & M Corp. reflected that the book value of the P & M preferred stock equalled its par value of $67,500.

The tax court concluded:

The evidence supporting the fair market value of the Baxter Milling Service assets on the date of sale clearly supports the $87,500 negotiated sales price. Because both the buyer and seller were willing and not under any compulsion to buy or sell, it is clear that the remaining $67,500

of the sales price was satisfied with the preferred stock and we find that its value was $67,500. [*Caligiuri, supra,* 34 Tax Ct. Mem. at 1394.]

We have reviewed the record. This determination is not clearly erroneous. The testimony of taxpayers' expert expressing a valuation opinion of $1,000 for the preferred stock as of the date of sale did not bind the tax court, notwithstanding the Commissioner's failure to call its own expert witness to express an opinion on valuation. The question of valuation remained a fact question, *Rubber Research, Inc. v. Commissioner,* 422 F.2d 1402, 1405 (8th Cir. 1970), and we find no basis to set aside the tax court's findings as clearly erroneous. *Comm'r v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

Affirmed.

---

**2.** The testimony of Mr. and Mrs. Caligiuri referred to the advance as having been made to the Leto brothers themselves, rather than to Crocker Poultry Co. The tax court referred to Crocker Poultry as a corporation, *Caligiuri, supra,* 34 Tax Ct. Mem. at 1395, but the appellants in their brief consistently refer to Crocker Poultry as a partnership. The evidence, meager as it is, indicates that at least one brother possessed some assets, other than his interest in Crocker Poultry.

**3.** We note that the taxpayers previously received the benefit of a $7,500 business, bad debt deduction under § 166(a). Any challenge to that deduction by the Commissioner is now barred by the statute of limitations. Nevertheless, the taxpayers, by reason of a reopening of their tax status on grounds of fraud, now claim the right to a nonbusiness, bad debt deduction based on the same $7,500 advance, subject to the Government's right to mitigation. *See* Int. Rev.Code of 1954, § 1311 *et seq.*