T.C. Memo. 1998-152


UNITED STATES TAX COURT


GREG R. VINIKOOR AND MELISSA D. VINIKOOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15567-94.                    Filed April 27, 1998.


<u>Scott M. Baker</u>, for petitioners.

<u>Andrew J. Horning</u>, for respondent.


MEMORANDUM OPINION


PARR, <u>Judge</u>:    Respondent determined a deficiency in, and
addition to, the income taxes of petitioners as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|---------------------------------|
| 1990 | $109,302  | $38,126                         |

All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

After concessions, the issues for decision are: (1) Whether the basis of certain shares of stock petitioners received from their grandfather in 1987 was the fair market value on the dates the transfers occurred. This turns on whether the transfers were gifts. We hold petitioners' basis is not the fair market value of the shares but the transferred basis of the grandfather. (2) Whether for 1990 petitioners are entitled to claimed deductions for investment interest relating to certain shares of stock received from their grandfather in 1987. We hold they are not. (3) Whether for 1990 petitioners are liable for an addition to tax pursuant to section 6651(a)(1). We hold they are.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in Tucson, Arizona, at the time the petition was filed.

General Background

Greg R. Vinikoor (petitioner) married Melissa Vinikoor (Mrs. Vinikoor) on March 21, 1987. Roy Drachman (Drachman) is Mrs.

Vinikoor's grandfather.  Mrs. Vinikoor received certain shares of stock as gifts from Drachman prior to her marriage to petitioner.

Prior to May 1, 1987, Drachman transferred 359 shares of Hubbell, Inc. (Hubbell stock), 50 shares of K-Mart Corp. (K-Mart stock), and 12,200 shares of Price Company (Price Co. stock) to petitioners which were placed in their stock account #853-15016 at Merrill Lynch, Pierce, Fenner & Smith, Inc. (the account). The account allowed petitioners to use credit cards and checks to draw against the stock portfolio as collateral.

Petitioner graduated[1] from college in the spring of 1987 and began a 12-month internship with Tucson Realty and Trust that paid $1,000 per month.  Petitioners lived on the money in the account.  At that time, petitioner had outstanding student loans which Mrs. Vinikoor agreed to help pay off from the account.

The May 1987 account statement showed that petitioners' 12,200 shares of Price Co. stock had a price per share of $43.25 for a total fair market value of $527,650.  In addition, the May 1987 account statement showed petitioners had equity of $558,232, expenses drawn against the account of $240,046, with a resulting net equity of $318,186 in the account.

As of September 26, 1987, petitioners had 12,400 shares of Price Co. stock in the account.  On October 29, 1987, 2,000

---

[1]    The record does not indicate from which educational institution petitioner graduated.

shares of petitioners' Price Co. stock were sold and on October 30, 1987, petitioners received 4,500 additional shares of Price Co. stock from Drachman.  These 4,500 shares were endorsed and signed over by Drachman and went directly into petitioners' account.

The October 1987 account statement showed that petitioners had 14,900 shares of Price Co. stock in the account with a price per share of $31, for a total fair market value of $461,900.  In addition, the October 1987 account statement showed petitioners had equity of $471,296, expenses drawn against the account of $272,016, with a resulting net equity of $199,280 in the account.

On December 10, 1987, petitioners received 2,000 additional shares of Price Co. stock from Drachman.  These 2,000 shares were endorsed and signed over by Drachman and went directly into the account.  The December 1987 account statement showed petitioners had equity of $563,705, expenses drawn against the account of $286,493, with a resulting net equity of $277,212 in the account.

On May 27, 1989, petitioners opened stock account #410-78048 (the second account) and transferred everything from the original account to the second account on May 30, 1989.  The original account was closed on August 25, 1989.  As with the first account, through 1990 petitioners used the second stock account as a personal checking account, and withdrew money from it based on borrowing power achieved by the equity in their stock.

During 1990, petitioners sold 13,150[2] shares of Price Co. stock for $482,903, triggering recognition of capital gain. Petitioners claimed a total basis of $197,455 for those shares on Schedule D of their 1990 Federal income tax return. Petitioners claimed a stepped-up fair market value basis in only the shares transferred to them by Drachman on October 30 and December 10, 1987, and acknowledged that the preceding shares of Price Co. stock were acquired by gift. Additionally, petitioners claimed $37,545 in deductible investment interest on Schedule A and Form 4952 of their 1990 Federal income tax return. Of this $37,545, petitioners claimed $22,800 as investment interest paid to Drachman for the Price Co. stock transferred to petitioners on October 30 and December 10, 1987.

On April 15, 1991, petitioners filed a Form 4868 Application for Automatic Extension of Time to File U.S. Individual Income Tax Return for their 1990 Federal income tax return, on which they claimed their tax liability to be zero. On August 13, 1991, petitioners filed a Form 2688 Application for Additional Extension of Time to File U.S. Individual Income Tax Return for their 1990 Federal income tax return, requesting an extension of

---

[2]    The parties stipulated that petitioners sold 13,350 shares of Price Co. stock during 1990. We note, however, that the Form 1099 for petitioners' account indicates, and respondent argued on brief that, 13,150 shares of Price Co. stock were sold.

time until October 15, 1991.  Petitioners did not list any tax due on the additional extension of time request.

Petitioners mailed their 1990 Federal income tax return on October 15, 1991, listing their amount owed as $20,306 (after prepaid withholding amounts of $3,941) but did not pay any amount of money with the return.  On April 20, 1992, petitioners filed an amended 1990 return listing an increase in their total tax liability of $24,124, for a total amount owed of $43,203 after withholding.  Petitioners filed a second amended 1990 return on October 30, 1992, listing their amount owed as $19,848.    A statutory notice of deficiency was mailed to petitioners on June 16, 1994, and addressed petitioners' original and first amended 1990 returns.

Issue 1.  Transfer of Shares of Price Co. Stock

Respondent determined that the October 30, 1987, and December 10, 1987, transfers of 4,500[3] and 2,000 shares of Price Co. stock, respectively, were gifts, with a basis of 10 cents per share, Drachman's basis.  Petitioners assert that these transfers of stock were valid loans, and that they are therefore entitled

---

[3]     Petitioners repeatedly argue at trial and on brief that Drachman transferred 5,000 shares of Price Co. stock on Oct. 30, 1987; however, their account statement from the period of Sept. 26, 1987, through Oct. 30, 1987, indicates that only 4,500 shares were transferred on that date.

to a stepped-up basis equal to the fair market value of the shares when they disposed of the stock.[4]

Petitioners assert that if the transfers of stock are bona fide loans, their basis is calculated as the fair market value of the shares. If the transfers are gifts, as respondent argues, petitioners' basis is the transferred basis of the donor. Sec. 1015(a).

We agree with respondent and hold that the shares of Price Co. stock transferred to petitioners in October and December 1987 were gifts and not loans. As gifts, petitioners are not entitled to a stepped-up basis in 7,000 shares, as they claim. Therefore, petitioners' basis in these shares is the same as their basis in other shares of Price Co. stock which they acknowledge were received as gifts. Since we find that all of petitioners' Price Co. shares were acquired by gift, petitioners' adjusted basis in the shares is the same as that of the donor, Drachman. Sec. 1015(a). Petitioner testified, and the account statements indicate that, Drachman's basis in the Price Co. stock was 10 cents per share. Accordingly, petitioners' carryover basis in

---

[4] The purported loan documents indicate that one of the conditions of the transfers was "That the stock will be returned to [Drachman] upon request." This raises the questions of whether petitioners were required to report income from discharge of indebtedness when they sold the stock, or whether they had the right to sell the stock at all. Since we hold that all of petitioners' Price Co. stock was acquired by gift, we need not decide these questions.

all of their shares of Price Co. stock is 10 cents per share. Sec. 1015(a).

The burden of proof is on petitioners to show that the shares of stock at issue were bona fide loans and not gifts. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). We always examine intrafamily transactions with special scrutiny. Caligiuri v. Commissioner, 549 F.2d 1155, 1157 (8th Cir. 1977), affg. T.C. Memo. 1975-319; Perry v. Commissioner, 92 T.C. 470, 481 (1989), affd. without published opinion 912 F.2d 1466 (5th Cir. 1990); Bragg v. Commissioner, T.C. Memo. 1993-479. The presumption is that a transfer between family members is a gift. Perry v. Commissioner, supra at 481; Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970). This presumption may be rebutted by an affirmative showing that there existed a real expectation of repayment and intent to enforce the collection of the indebtedness. Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), affd. per curiam 192 F.2d 391 (2d Cir. 1951).

The transfers are loans for Federal income tax purposes if, at the time the stock was transferred, the transferee unconditionally intended to repay the stock, and the transferor unconditionally intended to secure repayment. See Zimmerman v. United States, 318 F.2d 611 (9th Cir. 1963); Jones v. Commissioner, T.C. Memo. 1997-400. Thus, for petitioners to treat the shares received from Drachman as loans, petitioners

must prove that at the time of each transfer, they unconditionally intended to repay the amounts received and Drachman unconditionally intended to require payment. Rule 142(a); Welch v. Helvering, supra.

Although petitioners assert that the shares of stock were loans, a mere declaration by them that they intended the stock to constitute a loan is insufficient if the transaction fails to exhibit more reliable indicia of debt. See Williams v. Commissioner, 627 F.2d 1032, 1034 (10th Cir. 1980), affg. T.C. Memo. 1978-306; Alterman Foods, Inc. v. United States, 505 F.2d 873, 877 (5th Cir. 1974).

The determination of whether a transfer was made with a real expectation of repayment and an intention to enforce the debt depends on all the facts and circumstances including whether: (1) There was a promissory note or other evidence of indebtedness, (2) interest was charged, (3) there was security or collateral, (4) there was a fixed maturity date, (5) a demand for repayment was made, (6) any actual repayment was made, (7) the transferee had the ability to repay, (8) any records maintained by the transferor and/or the transferee reflected the transaction as a loan, and (9) the manner in which the transaction was reported for Federal tax purposes is consistent with a loan. See Zimmerman v. United States, supra at 613; Estate of Maxwell v. Commissioner, 98 T.C. 594, 604 (1992), affd. 3 F.3d 591 (2d Cir.

1993); Estate of Kelley v. Commissioner, 63 T.C. 321, 323-324 (1974); Rude v. Commissioner, 48 T.C. 165, 173 (1967); Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. per curiam 205 F.2d 353 (2d Cir. 1953); Bragg v. Commissioner, supra. The factors are not exclusive, and no one factor controls. Rather, our evaluation of the various factors provides us with an evidential basis upon which we make our ultimate factual determination of whether a bona fide indebtedness existed. See Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973).

With those factors in mind, we turn to the facts and circumstances surrounding the transfers of Price Co. stock at issue to determine whether at the time of the alleged loans petitioners entered into a bona fide debtor-creditor relationship with Drachman.

### 1. Promissory Note or Other Evidence of Indebtedness

Petitioners introduced what appear to be, in form, two valid loan documents signed by petitioner and Drachman. We must, however, look to the substance of the transaction rather than merely its form. Estate of Maxwell v. Commissioner, supra at 601. Petitioner testified that these notes had no amortization schedule, no minimum payment, and were due "only when I call it" (emphasis added). Accordingly, petitioners had no set schedule of regular payments and no minimum payments. These are not standard conditions for loan documents.

## 2.  Interest

The notes executed by petitioner and Drachman stated that one of the two conditions of the purported loan was that "[petitioner] pay interest at the rate of six percent (6%) per annum on the current value of the stock as interest during the period of the loan."  Petitioners paid no interest.

## 3.  Security or Collateral for the Transfers

There is no evidence that petitioners provided, or were even requested to provide, any security or collateral for the loans.

## 4.  Fixed Maturity Date for Repayment

There was no fixed date for repayment of the loans.

## 5.  Demand for Repayment

Although the record indicates that petitioners' alleged indebtedness to Drachman was substantial, Drachman made no demand on petitioners for payment.

## 6.  Actual Repayments

Petitioner testified that he had written small checks to Drachman, but offered no evidence, e.g., canceled checks, bank statements, etc., of actual repayment.

Petitioner testified that the only repayment of the supposed loans from Drachman was in the form of debt; i.e., shares, forgiven.  At Christmas time, Drachman would give equal shares of stock to his grandchildren.  Petitioners introduced letters prepared by Drachman from Christmas 1987 and 1989 where Drachman

gave his grandchildren 600 and 400 shares of Price Co. stock, respectively. The letters also stated that those grandchildren who had borrowed stock would have their loan decreased by those amounts. In addition, petitioners introduced a letter prepared by Drachman from Christmas 1991 indicating that their loan would be forgiven in the amount of 300 shares of Price Co. stock.

Petitioner testified that Drachman treated all of his grandchildren equally. Since petitioners, however, received far more shares of stock, and at a different time than provided in the Christmas letters, they argue, the additional stock must have been a loan.

Petitioner testified that:

> [Mrs. Vinikoor's] father and mother were married and divorced twice and [Mrs. Vinikoor] was the youngest of the [children] and so she incurred a lot of emotional animosity towards her father and so she was independent, * * * she was supporting herself and paying for her college and wedding and all that stuff, where I don't think that the others were.

Contrary to petitioners' position, this information makes the additional shares transferred to petitioners from Drachman appear more gift-like in nature. Drachman had a propensity for giving stock, and we presume he loved his granddaughter. Mrs. Vinikoor was estranged from her father and incurred greater expenses than the other grandchildren. We infer from this that the additional shares represented a wedding gift, a gift of college tuition payments, a graduation gift, or simply a gift to a grandchild who

needed money from a concerned grandfather who wanted to help out.

### 7.  Ability to Repay

The record establishes that petitioners' annual income was not sufficient to allow them to maintain their lifestyle and repay their obligations to Drachman.  Therefore, petitioners have not shown that there was a reasonable expectation that they could have repaid the loans from their annual income.

### 8.  Records of the Loans

The only records relating to the purported loans are the notes signed by petitioner and Drachman, and the Christmas letters forgiving the shares.

### 9.  Reporting the Loans for Federal Tax Purposes

Petitioner testified that he thought he recognized income from discharge of indebtedness in the years when shares of the loans were forgiven, but did not introduce income tax returns from those years indicating that he had reported the forgiven amounts.

Although not dispositive, we examine the purpose of the transfers of stock.  Petitioners and respondent dispute the underlying cause of the transactions.  Petitioners assert that shares of Price Co. stock were lent to them in October and December 1987 as collateral for threatened margin calls on their account.  These margin calls, petitioners claim, were the result of the stock market crash of October 1987 and a corresponding

decline in value of their Price Co. stock.  Respondent argues that any margin calls were due to petitioners' spending habits and not from a drop in the price of their stock.

We accept that there were margin calls.  We are not persuaded, as petitioner testified, that the margin calls were due solely to market fluctuations.  The margin calls were due, at least in equal part, to petitioners' undisciplined spending.

Petitioner testified that during this time period he and Mrs. Vinikoor were experiencing financial difficulties and living "hand to mouth".  An examination of petitioners' account statements, however, quickly indicates that they were not living the lifestyle of a recent graduate earning $12,000 per year.  Instead, petitioners were incurring substantial amounts of personal debt.

As of October 30, 1987, petitioners had accumulated $272,016 of debt against their account.  After taking into account the 2,000 shares of Price Co. stock which were sold on October 29, 1987, and used to reduce the amount of their debt, petitioners spent $93,779 in the 5-month period between May 29, 1987, and October 30, 1987.

In January 1988, 1 month after a margin call, Mrs. Vinikoor wrote herself $7,000 worth of checks from the account.  In February 1988, she wrote herself $6,300 worth of checks from the account.  This was not atypical of petitioners' spending habits,

as shown by their account statements during this time period.[5] Petitioners spent substantial amounts of money on airline tickets and travel, including hotels in Hawaii, San Diego, San Francisco, and Scottsdale. Petitioners continually shopped at department stores such as Saks Fifth Avenue, Neiman Marcus, Nordstrom, and Bloomingdale's. Petitioners' account statements indicate charges and checks written to numerous restaurants and upscale specialty stores. In addition, the account statements listed frequent expenses at the Tucson Country Club.

As petitioners were spending these substantial amounts against the equity in their stock, they never once made any type of payment to Drachman. In addition, we note that the value of the Price Co. stock per share increased following the stock market crash in October 1987, when petitioners' margin calls began. In October 1987, the Price Co. stock was valued at $31 per share. In October 1988 and November 1989, the Price Co. stock had increased to $40.5 and $48.25 per share, respectively. The stock was supposedly lent to petitioners merely to cover

---

[5] For example, petitioners' account statements for the following 5-month period indicate that Mrs. Vinikoor wrote checks to herself for the following amounts:

| Date | Amount |
| --- | --- |
| Mar. 1990 | $12,250 |
| Apr. 1990 | 7,600 |
| May 1990 | 6,500 |
| June 1990 | 7,800 |
| July 1990 | 15,000 |

threatened margin calls, but even after the value of the stock increased substantially, it was not returned to Drachman.

As previously stated, petitioner testified that the sole reason shares of Price Co. stock were transferred to him in October and December 1987 was to cover threatened margin calls. The acquisition of these additional shares, petitioner testified, would allow him to meet the margin calls without forcing him to sell shares of Price Co. stock already in his account. Petitioner's purported goal, therefore, was to save, and not sell off, the Price Co. stock. Based on petitioners' spending habits, as described above, we are persuaded that petitioners had little concern about maintaining their Price Co. stock, as they methodically depleted the equity in their account each month with extravagant purchases.

After the stock rose, Drachman, the supposed creditor in these transactions, never made any demand on petitioners for repayment, even though the value of the stock had increased substantially and petitioners were diminishing the stock with spendthrift habits. Petitioner testified that no demand was made, and no amount repaid, because "[Drachman] would prefer for [petitioners] to put a little bit away for [their] * * * children and their education than pay him back right now." This would not be the standard posture of a creditor in a bona fide loan. We believe Drachman did not expect to be repaid.

Petitioners rely on a Memorandum Opinion of this Court, <u>Hunt</u> <u>v. Commissioner</u>, T.C. Memo. 1989-335, contending that the facts in the <u>Hunt</u> case are very similar to the facts in the instant case. We disagree. The taxpayers in <u>Hunt</u> lent their children substantial funds to enable them to make margin calls in the silver and gold commodities markets. The <u>Hunt</u> case can be distinguished in several respects from this case. In <u>Hunt</u> we found that a bona fide debtor-creditor relationship existed. First, in <u>Hunt</u>, a demand for repayment was made although the taxpayers knew that the amounts could not be repaid. Second, the notes in <u>Hunt</u> bore interest at the prime rate. Third, some of the notes in <u>Hunt</u> had fixed maturity dates. Fourth, repayments were made by two of the taxpayers' children and one child repaid in full the sums she borrowed. Fifth, in <u>Hunt</u>, there was a bona fide business purpose for the transactions and no spendthrift behavior. Finally, in <u>Hunt</u>, we found that there was a gift at the point when the parents continued to lend, knowing that repayment was impossible. Thus, petitioners' reliance on <u>Hunt</u> is misplaced.

In consideration of all the facts and circumstances, we find that petitioners have failed to meet their burden of proving that any of the Price Co. shares transferred in October and December 1987 created bona fide debts which arose from a debtor-creditor relationship, and not gifts.

Issue 2.  Investment Interest

Respondent determined that petitioners were not entitled to deductions for investment interest claimed to have been paid to Drachman for the shares of Price Co. stock transferred to petitioners on October 30 and December 10, 1987.  Petitioners stipulated that they would not be entitled to claim these deductions if we found the shares of stock were not bona fide loans.  We have so found.[6]

In addition, there is no evidence to support that any of the claimed interest was ever paid.  Respondent is sustained on this issue.

Issue 3.  Addition to Tax Under Section 6651(a)

Respondent determined an addition to tax under section 6651(a) for delinquent filing of a return.

Section 6651(a) provides that if a taxpayer fails to file a return by its due date, including extensions of time for filing, there shall be an addition to tax equal to 5 percent of the tax required to be shown on the return for each month the failure to file continues, not to exceed 25 percent.  The addition to tax under section 6651(a) shall not apply, however, if the taxpayer

---

[6]     The parties stipulated that for 1990 petitioners claimed $22,800 as investment interest paid to Drachman for the transferred shares of Price Co. stock.  On brief, respondent argues that petitioners are not entitled to claim $20,754 as investment interest paid to Drachman in 1990.  We hold this $2,046 difference to be a concession by respondent.

can show that the failure to timely file the return was due to reasonable cause and not willful neglect.  Sec. 6651(a).

Petitioners were required to file a 1990 Federal income tax return by April 15, 1991.  Secs. 6012, 6072.  Taxpayers, however, may be granted reasonable extensions of time to file their returns.  Sec. 6081.  An automatic extension of time to file a return extends the time to file 4 months from the date the return was originally due.  Sec. 1.6081-4, Income Tax Regs.

On April 15, 1991, petitioners filed a Form 4868 Application for Automatic Extension of Time to File U.S. Individual Income Tax Return for their 1990 Federal income tax return, on which they claimed their tax liability to be zero. On August 13, 1991, petitioners filed a Form 2688 Application for Additional Extension of Time to File U.S. Individual Income Tax Return for their 1990 Federal income tax return, requesting an extension of time until October 15, 1991.  Petitioners did not list any tax due on the additional extension of time request.

Petitioners did not file their 1990 Federal income tax return until October 18, 1991, listing an amount owed of $20,306. On April 20, 1992, petitioners filed an amended 1990 return listing an increase in their total tax liability of $24,124, for a total amount owed of $43,203 after withholding.

Petitioners stipulated that they are liable for an addition to tax pursuant to section 6651(a)(1) for 1990 insofar as it

relates to the $20,306 listed as owed on their original return. Petitioners further stipulated that they are liable for an addition to tax pursuant to section 6651(a)(1) for 1990 insofar as it relates to their basis in their Price Co. stock if we found that the shares transferred to petitioners by Drachman on October 30 and December 10, 1987, were not bona fide loans. We have so found. Petitioners did not stipulate their liability for an addition to tax pursuant to section 6651(a)(1) insofar as it relates to the additional tax liability acknowledged on their amended return filed April 20, 1992.

The Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Some of petitioners' liability for additions to tax pursuant to section 6651(a)(1) for 1990 has been stipulated, and petitioners have failed to meet their burden as to the other liability.

Accordingly, respondent's addition to tax pursuant to section 6651(a)(1) is sustained.

For the foregoing reasons,

> Decision will be entered
> under Rule 155.