T.C. Memo. 2013-170

UNITED STATES TAX COURT

JUNE SHAW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8172-12.                    Filed July 24, 2013.

<u>Charles A. Naegele</u>, for petitioner.

<u>Jessica R. Browde</u> and <u>Matthew Carlson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  Respondent determined, with respect to petitioner's

Federal income tax for 2009, a deficiency of $122,144, a section 6651(a)(1)

addition to tax of $6,107, and a section 6662(a) penalty of $24,429.[1]  The issues for

_____

[1]Unless otherwise indicated, all statutory references are to the Internal

(continued...)

[*2] decision are: (1) whether petitioner is entitled to a nonbusiness worthless debt deduction under section 166; (2) whether petitioner is liable for an addition to tax for late filing of a tax return under section 6651(a)(1); and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a). We sustain respondent's disallowance of the worthless debt deduction because petitioner has failed to prove that the debt was a bona fide debt or that the obligation, if bona fide, had become worthless at yearend 2009. We also sustain respondent's determination of the addition to tax and the accuracy-related penalty.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Roseville, California, when she filed the petition.

During 2008 petitioner sold an apartment building that she owned in Fairfield, California, and realized a significant gain on the sale. She reported this gain under the installment sale method and expected to report a substantial portion of this gain on her tax return for 2009. During 2009 she searched for a suitable investment vehicle for the sale proceeds. She initially hoped to shelter this gain by

---

[1](...continued)
Revenue Code (Code) in effect for the tax year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] completing a like-kind exchange, but she was unable to locate an acceptable replacement property.

SRG Corp. is a California corporation originally owned by petitioner's father. When he passed away, all ownership interests in the business passed to his wife and his children. SRG Corp. is now owned by petitioner, her mother, and her siblings, including her brother, Kenneth Shaw. Mr. Shaw was president of the company, which was a family-owned real estate corporation at all relevant times.

Since 2002 petitioner has worked for SRG Corp. as an officer and as an employee. She was paid a salary for her services as the bookkeeper and chief financial officer of SRG Corp. She had check-signing authority over one or two of the company's bank accounts. Her responsibilities included handling the accounts payable, the accounts receivable, and all office matters.

As of 2007 SRG Corp. owned several real estate properties, all held for their potential to produce rental income. These properties included single-family and multifamily units, as well as one commercial property. Sometime in 2007 Mr. Shaw decided that SRG Corp. would undertake its first real estate development project. To this end, he located a derelict property with the intent to rehabilitate it into a food court and related commercial units. To finance the development, Mr. Shaw obtained from United Commercial Bank (UCB) a $1 million mortgage loan

[*4] to purchase the underlying property and a $1 million line of credit to pay construction expenses. In addition to these funds, Mr. Shaw estimated that he would need another $1 million to $3 million to complete the renovation. He planned to name the rehabilitated property "Shaw Plaza."

In July 2008 Mr. Shaw obtained a commitment from Lisa Lembi to invest $2 million in Shaw Plaza. In exchange, Ms. Lembi would receive a 50% equity interest in the newly created Shaw Plaza LLC, and SRG Corp. would then own the remaining 50% equity interest. One month later Ms. Lembi formally rescinded her commitment to invest in Shaw Plaza, leaving SRG Corp. as the sole owner of the venture. Forced to look for other sources of funding to complete the development of Shaw Plaza, Mr. Shaw approached petitioner.

In January 2009 petitioner agreed to commit $1 million, in the form of a revolving line of credit, to the development of Shaw Plaza. The note from SRG Corp., executed on January 2, 2009, called for 10% annual interest, which was to accrue until January 2011 when the principal was also due. Petitioner did not require any collateral, and the line of credit was unsecured at all times. No interest or principal was ever paid on the note.

During 2009 petitioner made 74 separate advances to SRG Corp., transferring funds periodically as the company needed money for construction.

[*5] These transfers began in early January and occurred at regular intervals through December 7, 2009. Petitioner advanced $416,700 between January and June, and another $391,775 between July and December. She effected the transfers by writing checks from her personal bank account and depositing the checks in SRG Corp.'s bank account.

SRG Corp. encountered financial difficulties during 2009. Cashflow was tight in January when there were insufficient funds to pay all creditors; the company's financial situation became worse during the second half of the year. Nevertheless, petitioner continued to transfer funds to SRG Corp. under the line of credit through December 2009. Petitioner's advances during that year totaled $808,475. The Shaw Plaza development was unfinished at yearend 2009, and the project, in Mr. Shaw's words, was "canceled" at that point.

On her 2009 Federal income tax return petitioner reported long-term capital gain of $1,118,954, representing gain from the installment sale reporting of the 2008 sale of the Fairfield apartment building. By way of partial offset against this gain, petitioner claimed a nonbusiness worthless debt deduction of $808,475 for the funds she had transferred to SRG Corp. during 2009.

At trial petitioner presented no documentary evidence as to SRG Corp.'s financial condition. At yearend 2009 the company continued to own the real estate

[*6] underlying the Shaw Plaza project, as well as five or six other income-producing rental properties that it previously owned. According to Mr. Shaw, some of these properties were "under water," and one or more properties may have been foreclosed upon or sold at short sale some time after yearend 2009. However, neither Mr. Shaw, the president of SRG Corp., nor petitioner, its chief financial officer, produced any books, records, or financial statements showing the corporation's annual income and expenses for 2009, or its assets, liabilities, or net worth at any point in 2009. SRG Corp. did not enter bankruptcy and was still an active corporation in July 2011. No documentation was presented to show that SRG Corp. recognized cancellation of indebtedness income for Federal income tax purposes for 2009.

The evidence was unclear as to whether petitioner made a demand for repayment of the note at yearend 2009. Mr. Shaw testified that petitioner did not make any formal demand for repayment, whereas petitioner recalled that she had made a demand for repayment of $5,000. Petitioner commenced no legal action in an effort to secure repayment, and she did not obtain an opinion from an accountant or a financial consultant that the note was worthless. Rather, petitioner drew an independent conclusion, in her capacity as the company's bookkeeper, that

**[*7]** SRG Corp. would never be able to repay the money that she had transferred to it during 2009.

Petitioner timely filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return. This extended her time to file her 2009 return until October 15, 2010. The IRS Service Center in Fresno, California, date-stamped her return as having an "envelope postmark" date of October 20, 2010.

OPINION

## I.    Burden of proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and a taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The taxpayer likewise bears the burden of proving her entitlement to deductions allowed by the Code and of substantiating the amounts of any claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact. Respondent bears the burden of production, but petitioner bears

**[\*8]** the burden of proof, with respect to the addition to tax under section 6651 and any accuracy-related penalty under section 6662. See sec. 7491(c).

II.     Section 166 bad debt deduction

    A.     Bona fide debt

Section 166(a)(1) allows as a deduction any bona fide debt that becomes worthless within the taxable year. For nonbusiness bad debt held by a taxpayer other than a corporation, section 166(a)(1) does not apply, and the taxpayer is allowed a short-term capital loss for the taxable year in which the debt becomes completely worthless. Sec. 166(d)(1); sec. 1.166-5(a)(2), Income Tax Regs. A bona fide debt is a debt that arises from "a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs. A gift or contribution to capital is not considered a "debt" for purposes of section 166. Kean v. Commissioner, 91 T.C. at 594. Whether a purported loan is a bona fide debt for tax purposes is determined from the facts and circumstances of each case. See A.R. Lantz Co. v. United States, 424 F.2d 1330, 1333 (9th Cir. 1970); Gross v. Commissioner, 401 F.2d 600, 603 (9th Cir. 1968), aff'g T.C. Memo. 1967-31; Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980) (citing cases).

[*9]  Transactions between family members are subject to special scrutiny to determine whether a purported loan was actually a gift.  Caligiuri v. Commissioner, 549 F.2d 1155, 1157 (8th Cir. 1977), aff'g T.C. Memo. 1975-319; Perry v. Commissioner, 92 T.C. 470, 481 (1989), aff'd without published opinion, 912 F.2d 1466 (5th Cir. 1990).  A transfer between family members is presumed to be a gift.  Perry v. Commissioner, 92 T.C. at 481; Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970).  This presumption may be rebutted by an affirmative showing that there existed at the time of the transfer a real expectation of repayment and an intent to enforce the collection of the indebtedness.  Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), aff'd per curiam, 192 F.2d 391 (2d Cir. 1951).

Advances made by an investor to a closely held or controlled corporation may properly be characterized, not as a bona fide loan, but as a capital contribution.  See Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3d Cir. 1968).  In general, advances made to an insolvent debtor are not debts for tax purposes but are characterized as capital contributions or gifts.  See Dixie Dairies Corp. v. Commissioner, 74 T.C. at 497; Davis v. Commissioner, 69 T.C. 814, 835-836 (1978).  For an advance to constitute a bona fide loan, the purported creditor

[*10] must expect that the amount will be repaid. See CMA Consol., Inc. v. Commissioner, T.C. Memo. 2005-16, T.C.M. (CCH) 701, 724 (2005).

In determining whether an advance of funds constitutes a bona fide debt, economic reality provides the touchstone. If an outside lender would not have loaned funds to the corporation on the same terms as did the insider, an inference arises that the advance is a not a bona fide loan. See Fin Hay Realty Co., 398 F.2d at 697. The Court may properly characterize a transfer of funds to a corporation as other than a debt even if "all the formal indicia of an obligation were meticulously made to appear." Ibid.; see Davis v. Commissioner, 69 T.C. at 835 ("The question of whether the advances made by petitioners * * * are debt or equity depends on the economic substance of the transactions between them and not upon the form of the advances."); Estate of Reynolds v. Commissioner, 55 T.C. at 201-202.

Petitioner's transfer of funds to a family real estate company whose other owners were her mother and her siblings creates an inference that the transaction may have been, directly or indirectly, a gift. Petitioner was an officer and an employee of SRG Corp. and also had some form of ownership interest in the company. Because the company was experiencing financial distress during 2009, an inference arises that her payments may have been a capital contribution. In either case, the central inquiry is whether petitioner has demonstrated that, at the

[*11] time she advanced the funds, she had a real expectation of repayment and an intent to enforce collection of the indebtedness. See Davis v. Commissioner, 69 T.C. at 835-836; Estate of Van Anda v. Commissioner, 12 T.C. at 1162.

Petitioner provided no documentary evidence concerning SRG Corp.'s creditworthiness as of January 2009 when she executed the line of credit. The company was clearly solvent in mid-2007, when UCB, an unrelated lender, provided mortgage and construction financing. But the real estate market had declined by January 2009. Ms. Lembi, who had agreed in July 2008 to invest $2 million in exchange for a 50% equity interest, rescinded her commitment just four weeks later. Mr. Shaw testified that SRG Corp. had to defer payments on the mortgages underlying its rental properties so that it could make payments to UCB on the Shaw Plaza loans. Thus, both petitioner's and Mr. Shaw's testimony indicated that SRG Corp. was facing financial difficulty even before petitioner began to advance funds.

Despite the company's questionable financial status, petitioner did not request collateral. Nor did she insist on financial covenants that would condition future line-of-credit advances on the company's adherence to specified income, net worth, or debt-to-equity benchmarks. Rather, she extended an open-ended, unsecured line of credit that did not require repayment of any interest or principal

[*12] for two years.  There was no evidence that a third-party lender, in January 2009, would have extended credit to SRG Corp. on comparable terms.

Petitioner's behavior over the course of 2009 was likewise inconsistent with what one would expect from a third-party lender.  SRG Corp.'s finances became more precarious during the second half of the year.  Yet rather than moderate her advances, petitioner left the spigot open.  She advanced $391,775, or approximately 48.5% of the total, after July 1, 2009.  And she advanced $70,000 during November and December 2009, shortly before she allegedly became certain that SRG Corp. would never be able to repay her.  A third-party lender with perfect knowledge of the company's finances--which petitioner as its bookkeeper had-- would not have been so generous.

Petitioner's behavior at the end of 2009 is similarly at odds with the conduct of a bona fide lender.  She made no serious effort to obtain repayment of the alleged loan, orally requesting repayment of at most $5,000.  She pursued no other collection actions:  she did not send a letter demanding payment; she did not contact an attorney; and she did not file suit.  We believe that a creditor with a genuine expectation of repayment would have acted more aggressively to collect the $808,475 at stake.

**[\*13]** Petitioner urges that the advances should be respected as a loan because loan formalities were duly observed. We recognize that the line of credit took the form of a written debt instrument. But because family members are free to document a transaction among themselves in any manner they choose, the form selected has little probative force. The line of credit had a stated interest rate and maturity date, but this likewise proves little because no interest or principal was ever paid. In any event, we may look behind the loan documentation to apprehend the true nature of the transaction. As we have concluded above, no outside lender, animated by a genuine desire for repayment, would have behaved as did petitioner during the life of the alleged loan. See Fin Hay Realty Co. v. United States, 398 F.2d at 697.

We accordingly find that petitioner has failed to meet her burden of proving that her advances to SRG Corp. constituted a bona fide debt that arose from a debtor-creditor relationship. Because petitioner, as SRG Corp.'s bookkeeper, was fully aware that the corporation was unable to pay its bills as they became due, she could not have had a reasonable expectation of repayment. See CMA Consol., Inc. v. Commissioner, 89 T.C.M. (CCH) at 724. The line of credit was therefore not a bona fide loan capable of generating a worthless debt deduction under section 166(a) or (d).

- 14 -

**[*14]** B.     Worthlessness in 2009

Assuming arguendo that a bona fide debt existed, we conclude that petitioner failed to establish worthlessness in 2009.  Petitioner bears the burden to show that her loan had become totally worthless in 2009, the year for which she claimed the bad debt deduction under section 166.  See Rule 142(a); Crown v. Commissioner, 77 T.C. 582, 598 (1981).  There is no standard test or formula for determining worthlessness.  See Lucas v. Am. Code Co., 280 U.S. 445, 449 (1930).  Where circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, the facts are sufficient to establish worthlessness.  Sec. 1.166-2(b), Income Tax Regs.  Our determination whether a debt is wholly worthless is based on all the facts and circumstances, including the financial condition of the debtor.  Sec. 1.166-2(a), Income Tax Regs.

A taxpayer generally must show identifiable events to prove worthlessness in the year claimed.  Am. Offshore, Inc. v. Commissioner, 97 T.C. 579, 593 (1991).  Objective indicia may include a decline in the debtor's business; a decline in the value of the debtor's assets; the overall business climate; serious financial reverses suffered by the debtor; the debtor's earning capacity; events of default; insolvency of the debtor; the debtor's refusal to pay; actions taken by the creditor

[*15] to pursue collection; and subsequent dealings between the creditor and debtor. Id. at 594. No single factor is conclusive. Id. at 595. The mere fact that a business is in decline, that it has failed to turn a profit, or that the debt obligation is difficult to collect is insufficient to prove that the debt has become worthless. Intergraph Corp. & Subs. v. Commissioner, 106 T.C. 312, 323 (1996), aff'd without published opinion, 121 F.3d 723 (11th Cir. 1997). This is especially true where the debtor continues as a going concern with the potential to earn a future profit. Roth Steel Tube Co. v. Commissioner, 620 F.2d 1176, 1182 (6th Cir. 1980), aff'g 68 T.C. 213 (1977).

Petitioner's and her brother's testimony suggested that the line of credit may have lost value during 2009. But without testimony from a disinterested party or documentary evidence to corroborate the claim, this testimony is insufficient to discharge petitioner's burden of proving that the debt had become wholly worthless by the end of that year. Having full access to the financial records of SRG Corp., petitioner reviewed them and allegedly formed an opinion that her debt had become worthless. But none of the financial documents petitioner examined are in the record for us to make an independent determination of the company's net worth and ability to pay at yearend 2009. There is no evidence showing the alleged debtor's cashflow or earnings and no evidence to assist us in determining

**[\*16]** whether its aggregate liabilities exceeded the value of its assets. No event of default occurred during 2009; indeed, no principal or interest payment was due until 2011. We decline to accept the unsupported opinion of petitioner alone as proof that the alleged debt was worthless at yearend 2009. See Dustin v. Commissioner, 53 T.C. 491, 502 (1969), aff'd, 467 F.2d 47 (9th Cir. 1972).

In the absence of any records evidencing the borrowing entity's actual financial condition, petitioner's claim ultimately rests on her subjective opinion that she would never be repaid. Given the family context in which this transaction occurred, the evidence suggests that she reported the debt as worthless at yearend 2009 not because she genuinely believed that she would never be repaid, but because she hoped to secure an $808,475 capital loss to offset against the million-dollar capital gain that she was required to report for that year.

In sum, even if petitioner had proven that her advance of funds to SRG Corp. was a bona fide loan, we conclude that she has failed to prove that the loan was totally worthless in 2009. Petitioner therefore is not entitled to a bad debt deduction under section 166(d)(1).

**[\*17]** III.     Addition to tax and penalty

   A.     Addition to tax under section 6651(a)(1)

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on a return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto.  The penalty period commences the first day after the return is due (taking into account extensions of time to file) and ends when the Commissioner actually receives the delinquent return.  See sec. 6651(a); Rev. Rul. 73-133, 1973-1 C.B. 605.  When a return is required to be filed on or before a prescribed date and the return is delivered by U.S. mail after that date, the date of the U.S. postmark is deemed the date of delivery.  Sec. 7502(a). To take advantage of this "timely mailing, timely filing" rule, the taxpayer must demonstrate that the return was actually mailed on or before its due date.  See Emmons v. Commissioner, 92 T.C. 342, 346 (1989), aff'd, 898 F.2d 50 (5th Cir. 1990).  See generally Sanderling, Inc. v. Commissioner, 67 T.C. 176 (1976) (discussing "timely mailing, timely filing" rule), aff'd in part, 571 F.2d 174 (3d Cir. 1978).

Petitioner timely requested, and was granted, an extension of time to file her 2009 income tax return.  With the extension, her return was due on October 15, 2010.  Her return indicates that it was signed on October 15, 2010.  However, the

**[*18]** return was date-stamped by the Service Center in Fresno as having an "envelope postmark" date of October 20, 2010. Respondent has thus borne his burden of production that the return was not timely filed.

Under precedents from the Court of Appeals for the Ninth Circuit, to which this case is appealable absent stipulation by the parties otherwise, see sec. 7482(b)(1)(A), a taxpayer may present forms of proof, other than a certified or registered mail receipt, to establish that a return was timely mailed, see Anderson v. United States, 966 F.2d 487, 490-491 (9th Cir. 1992). But see Me. Med. Ctr. v. United States, 675 F.3d 110, 116 (1st Cir. 2012) (noting circuit split on this issue). Petitioner appears to argue that she satisfied the "timely mailing, timely filing" rule, testifying that she "thought [she] mailed it on the deadline, the 15th." She apparently did not mail the return herself, but asked someone else to mail it, and that person did not testify. No one else testified as to when the return was mailed. Petitioner's assertion that her return was mailed on October 15 is controverted by the date stamp affixed to the return in the ordinary course of business by the Fresno IRS Service Center, which shows a postmark date of October 20. See B.D. Morgan & Co. v. Commissioner, T.C. Memo. 1988-569 (taxpayer who does not use registered or certified mail assumes risk of late delivery); sec. 301.7502-1(c)(1)(iii), Proced. & Admin. Regs.

**[\*19]** A taxpayer's uncorroborated testimony of mailing is insufficient to prove timely filing. Davis v. United States, 43 Fed. Cl. 92, 95 n.5 (1999) ("Even in jurisdictions such as the Eighth and Ninth Circuits, which allow circumstantial evidence to create a presumption of receipt, plaintiff's uncorroborated testimony of mailing is insufficient to prove timely filing."), aff'd without published opinion, 230 F.3d 1383 (Fed. Cir. 2000). Petitioner presented no evidence of actual mailing on October 15 and suggested no reason to believe that the Service Center's date stamp showing October 20 as the "envelope postmark" date was incorrect. Petitioner accordingly may not rely on the "timely mailing, timely filing" rule.

Failure to file a tax return on or before the prescribed due date renders the taxpayer liable for the addition to tax unless she shows that such failure was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985); McMahan v. Commissioner, 114 F.3d 366, 368 (2d Cir. 1997), aff'g T.C. Memo. 1995-547; sec. 301.6651-1(c), Proced. & Admin. Regs. Failure to file a tax return on time is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but was nevertheless unable to file the return within the prescribed time. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

**[*20]** Petitioner offered no evidence that she was unable to file her return by October 15. Although she testified that she relied on someone else to file it, there was no evidence that this person was a tax professional. In any event, reliance on a tax professional cannot constitute "reasonable cause" for a late filing where (as here) the return's due date is obvious to the taxpayer. See Boyle, 469 U.S. at 252. We accordingly sustain respondent's imposition of the addition to tax under section 6651(a)(1).

B.    Accuracy-related penalty

Section 6662 imposes a 20% accuracy-related penalty on any underpayment attributable to, among other things: (1) negligence or disregard of rules or regulations, or (2) any substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). An understatement is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on a return for a taxable year. Sec. 6662(d)(1)(A). Only one accuracy-related penalty may be imposed for a given portion of an underpayment even though that portion implicates more than form of misconduct described in section 6662. Sec. 1.6662-2(c), Income Tax Regs.

The Commissioner bears the burden of production with respect to this penalty. Sec. 7491(c). Respondent's notice of deficiency, whose determinations

**[\*21]** we have sustained, determined an underpayment due to an understatement of income tax in excess of $5,000 and 10% of the total tax required to be shown on petitioner's 2009 return. Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax."

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment "if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith." The decision whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess her proper tax liability. Id. Other circumstances include the experience, knowledge, and education of the taxpayer, as well as the extent to which the taxpayer reasonably and in good faith relied on the advice of a competent professional tax adviser. Sec. 1.6664-4(c)(1), Income Tax Regs.; see Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner did not show that she relied on the advice of a tax professional in claiming a worthless debt deduction for 2009. She testified that she prepared her return using TurboTax, with the help of a friend who she thought might be a

**[*22]** C.P.A. Assuming arguendo that her friend was a competent tax professional, we find no evidence that petitioner fully disclosed the facts surrounding the line of credit and was advised that a worthless debt deduction could properly be claimed for 2009.

Nor are we convinced that petitioner otherwise made a good-faith effort to ascertain her proper tax liability. She may reasonably have believed that the note she signed in January 2009, which was denominated a loan, would be treated as a loan for tax purposes. But we are unpersuaded of the reasonableness and genuineness of her belief that the loan was totally worthless as of yearend 2009. As the chief financial officer of the alleged borrowing entity, she was the custodian of its books and records. These books and records, if produced at trial, could have demonstrated--if that were the case--that the company was insolvent or otherwise unable to repay the loan. Petitioner's failure to produce these records at trial, or to respondent before trial, creates an inference that the records would not have been helpful to her position. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947). Under these circumstances, we are unable to conclude that she acted in good faith when claiming the worthless debt deduction. We accordingly sustain respondent's determination of the accuracy-related penalty.

[*23]   We have considered all of petitioner's arguments in reaching our conclusions, and all arguments not discussed herein have been rejected as moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.